OPINION OF THE COURT
Joseph S. Mattina, S.
This proceeding is for the construction of the will of the above-named decedent and was initiated by a petition filed with this court on April 21, 1988.
The facts in the instant case are as follows. Irene H. *187 Lippincott died on January 10, 1987. She left surviving three natural granddaughters, Roberta Kruszka Buczkowski, Barbara Kruszka Hanlon and Dyann Kruszka Zusi. The mother of the three grandchildren, Ann Lippincott Kruszka, became seriously ill during the mid-1950’s and in 1956 was hospitalized. At that time, both Roberta Kruszka Buczkowski and Barbara Kruszka Hanlon went to live with their grandmother, Irene H. Lippincott. Irene H. Lippincott placed the third sister, Dyann Kruszka Zusi, who was approximately 2 Vi years of age at the time, with Mr. and Mrs. Eugene Woodard. Mr. and Mrs. Woodard were not relatives of either Irene H. Lippincott or Ann Lippincott Kruszka. Ann Lippincott Kruszka died on May 17, 1964; Dyann Kruszka Zusi lived with the Woodard family thereafter. There is undisputed evidence that she accepted the Woodards as her own family, that they accepted her as a member of their family, and that she, in fact, unofficially took Woodard as her own surname. On May 29, 1975, at age 21, Dyann Kruszka Zusi was adopted by Mr. and Mrs. Eugene Woodard.
On September 23, 1969, Irene H. Lippincott executed a last will and testament. The relevant provisions to this proceeding are as follows:
"third: I give and bequeath to my granddaughter barbara kruszka hanlon one cherry drop-leaf table and one cedar chest, and I give and bequeath to my granddaughter, dyann kruszka, one cherry drop-leaf table (smaller) and one cedar chest (with tray). * * *
"fifth: All the rest, residue and remainder of my estate, real and personal, I give, devise and bequeath to my Trustee hereinafter named, in trust nevertheless for the following uses and purposes:
"I direct my Trustee to divide this property into equal shares and establish as many separate trusts as there are granddaughters of mine then living and to administer each separate trust for the following uses and purposes:
"1. To hold, manage, invest and reinvest the same; to [sic] collect the income and profits and accumulate all the income and to pay or apply the net income, accumulations, and such portion of the principal as in the sole discretion of my Trustee may be required, for the proper support, maintenance, care and education of each of my said granddaughters out of each such separate trusts, until the granddaughter for whom any trust shall have been set apart shall attain the age of twenty- *188 five (25) years, and at such time as any one of my granddaughters shall attain such age, my Trustee is directed to pay over the corpus of that separate trust established for such granddaughter together with any accumulated income thereon.
"In the event that any granddaughter shall die following the establishment of the trusts herein, then the corpus of the trust set aside for such granddaughter shall be divided equally and added to the trust fund or funds of any other surviving granddaughters.”
At the time the will was drawn, all three grandchildren were in close contact with their grandmother. When Dyann Kruszka Zusi was adopted in 1975, there was no secrecy whatsoever attached to that proceeding. As a matter of fact, there was no change in the relationship between the grandmother and the adopted grandchild after the adoption until the grandmother’s death in 1987. It should be noted that at the time of the decedent’s death, all three natural granddaughters were adults having reached the age of 25, and that the provisions of the will drawn in 1969 had never been changed.
The petitioners, coexecutors of the estate of Irene H. Lippincott, have instituted this construction proceeding in order to determine the interpretation of Domestic Relations Law § 117 (2) (a), which states that, "Except as hereinafter stated, after the making of an order of adoption, adopted children and their issue thereafter are strangers to any natural relatives for the purpose of the interpretation or construction of a disposition in any instrument, whether executed before or after the order of adoption, which does not express a contrary intention or does not expressly include the individual by name or by some classification not based on a parent-child or family relationship.”
The respondents, Barbara Kruszka Hanlon and Roberta Kruszka Buczkowski, argue that the language of the statute should be narrowly interpreted to require that before an adopted-out child, in this case Dyann Kruszka Suzi, may take under a class gift in the will of her natural grandmother, she must be included specifically, by name, in each and every such disposition. This interpretation would exclude Dyann Kruszka Zusi from the class of "granddaughters of mine then living” since she is not specifically mentioned by name, and prohibit her from taking under paragraph fifth of the will submitted for probate.
*189 This court does not agree. Article 7 of the Domestic Relations Law clearly illustrates the Legislature’s intent that, "[an] adopted child should be completely severed from his natural family and his status in his new family should be for all purposes that of a natural child.” (Second Report of Temporary [Bennett] Commn on Estates, 1963 NY Legis Doc No. 19, appendix E, at 160.)
Consistent with, and in order to further this legislative purpose, the child’s inheritance rights, in general, are transferred from the biological to the adoptive family. Moreover, permitting an adopted-out child to inherit from or through his natural parents under a class gift in every case runs strongly against public policy. These policy concerns include the maintenance of confidentiality of adoption records as embodied in Domestic Relations Law § 114, which, as expressed in Matter of Best (66 NY2d 151, 155), the leading case on this point, is viewed as "vital and beneficial to the entire adoption process”. Procedural concerns include, "the stability of real property titles as well as other property rights passing under Surrogate’s Court decrees * * * [and that the] [fjinality of such decrees could never be achieved because there would always lurk the possibility, no matter how remote, that a secret out-of-wedlock child had been adopted out of the family by a biological parent or ancestor of a class of beneficiaries. No search conducted by a personal representative would ever be complete”. (Supra, at 156.)
In Best (supra), all of these concerns were at issue. In that case, the biological mother was seeking the location of her natural child and the inclusion of that child under the term "issue” so that the child could take a share of a trust estate devised by his biological grandmother under her will. This involved the opening of sealed adoption records, in view of the fact that the child had been born out of wedlock and adopted out of the natural family at birth. The child was not named in any portion of the will.
This is not the case at bar. The facts indicated that Dyann Kruszka Zusi was the natural daughter of Ann Lippincott Kruszka and that her whereabouts were well known to all the parties involved. As a matter of fact, after she had been placed to live with the Woodards, a meaningful relationship developed between her and her grandmother, Irene Lippincott, which continued to the end of her grandmother’s life. Another distinguishing factor was that the adoption took *190 place when Dyann Kruszka Zusi was an adult. Finally, the will referred to Dyann Kruszka (Zusi) by name in a preceding disposition, namely, paragraph third mentioned above.
The legislative history of Domestic Relations Law § 117 (2) (a) recognized that, "adopted-out children are not all similarly situated * * * to exclude all such children from their former class would do an injustice to those (a) who are known to their natural kindred, (b) who have not lost contact with such kindred, or (c) whose identity could be discovered without (i) violating rights of privacy of the natural parent(s), the adoptive parent(s) or the child, (ii) involving the unsealing of adoption records and (iii) unduly delaying the settlement of estates through searches for unknown heirs.” (1986 Recommendation of Law Rev Commn, 1986 McKinney’s Session Laws of NY, at 2581.) This is precisely the case at bar.
It is a well-established rule of law that the primary object of a construction proceeding is the determination of the intent of the testator. (Matter of Cord, 58 NY2d 539 [1983].) The testatrix executed the will in 1969, 13 years after Dyann Kruszka Zusi had been placed with the Woodards, and could have easily excluded Dyann from the will.
Such was not her intent. From a reading of the last will and testament of Irene H. Lippincott, it is evident that the testatrix clearly intended to include Dyann Kruszka Zusi as belonging to that class of persons described as "granddaughters of mine then living,” and specifically designates her as such in paragraph third of the will by naming her as "my granddaughter, dyann kruszka.” This completely fulfills the requirements of Domestic Relations Law § 117 (2) (a). Nowhere in the legislative history of that statute, nor in its text as enacted by the Legislature or in the Practice Commentary attached thereto, or in the text of the decision in Best (supra), does it state that the child must be named in the specific devise, but merely to be "named individually [with]in the instrument” (Scheinkman, Practice Commentary, McKinney’s Cons Laws of NY, Book 14, Domestic Relations Law § 117, at 525), as is here the case.
Wherefore, Dyann Kruszka Zusi is entitled to a one-third share of the residuary estate, together with her two other sisters, Roberta Kruszka Buczkowski and Barbara Kruszka Hanlon.