**In the Matter of the ESTATE OF Emma ROGERS, Deceased.**

**In the Matter of the LAWRENCE J. ROGERS TRUST, Barbara Wardenburg, Executor and Beneficiary, Appellee,**

**v.**

**Robert L. ROGERS, Appellant.**

No. 90–171.

Supreme Court of Iowa.

July 17, 1991.

Philip A. Leff of Leff, Haupert & Traw, Iowa City, and L.G. Klein, Oxford, for appellant.

James Claypool of Claypool & Claypool, Williamsburg, for appellee.

Considered by McGIVERIN, C.J., and LARSON, LAVORATO, SNELL, and ANDREASEN, JJ.

ANDREASEN, J.

This appeal arises from a declaratory judgment interpreting a will and testamentary trust. The respondent urges that under options provided in the instruments, he is entitled to purchase two 40–acre tracts for a total of $36,000. The executor of the will urges that the purchase price under the will is $36,000 for an undivided half interest in the property and another $36,000 under the trust for the other undivided half interest. The district court ruled for the executor. On appeal, we transferred the case to the court of appeals which reversed the judgment of the district court on a divided vote. We granted further review and now vacate the court of appeals

decision and affirm the district court judgment.

## I. *Background.*

On December 7, 1983, Lawrence J. Rogers executed his Last Will and Testament. Article I provided for the establishment of a trust in the event his wife, Emma, survived him. The residue of his estate, including the two tracts of land in issue, were devised to this trust. Lawrence held the two tracts of land as a tenant in common with Emma.

The language in controversy is contained in Article II, and reads as follows:

I grant to my son, Robert Lawrence Rogers, the option to purchase either from my estate or from the trust established under paragraph 5 of Article I of this will, all of the right, title, and interest of my estate or said trust in the following tracts of real estate, at the purchase price indicated:

(A) The Northwest Quarter of the Northwest Quarter of Section 14, Township 79 North, Range 7 West of the 5th P.M., at a purchase price of $500.00 per acre; and,

(B) The Southwest Quarter of the Northwest Quarter of Section 14, Township 79 North, Range 7 West of the 5th P.M., at a purchase price of $400.00 per acre.

Robert Lawrence Rogers shall have the right to purchase either or both of such tracts, but must exercise his option rights within thirty (30) days following (a) the date of death of Emma, if she survives me, or, (b) the date of my death in the event Emma does not survive me, by written notice of exercise given to (i) the then acting trustee or trustees of the trust established under Paragraph 5 of Article I of the will in the event Emma survives me, or, (ii) to the executor or executors of my estate in the event Emma does not survive me; and, in the event either or both of these options are exercised the total purchase price shall be paid by my said son to said trust or to my estate within sixty (60) days from the date of exercise.

Lawrence Rogers died July 27, 1984, survived by Emma. Accordingly, his interest in the two tracts went into the trust. Emma died on October 12, 1989. Barbara Wardenburg was appointed as executor of her estate, and on November 8, 1989, she filed a petition for Interpretation of Will and Trust.

Emma's will was executed on March 28, 1989, almost five years after Lawrence's death. Both wills were drafted by the same attorney. Emma's will, in pertinent part, reads as follows:

I grant to my son, Robert Lawrence Rogers, if he survives me, the option to purchase from my estate all of my right, title and interest in the following tracts of real estate, at the purchase price indicated:

(A) The Northwest Quarter of the Northwest Quarter of Section 14, Township 79 North, Range 7 West of the 5th P.M., at a purchase price of $500.00 per acre; and,

(B) The Southwest Quarter of the Northwest Quarter of Section 14, Township 79 North, Range 7 West of the 5th P.M., at a purchase price of $400.00 per acre.

Robert Lawrence Rogers shall have the right to purchase either or both of such tracts but must exercise his option rights within thirty (30) days following the date of my death by written notice of exercise given to the executor of my estate; and, in the event either or both of these options are exercised the total purchase price shall be paid by my said son to my estate within sixty (60) days from the date of exercise. In the event either or both of the options are not exercised within the thirty (30) day option period, such option or options shall lapse.

■ Robert urges that the intent of his parents was for him to be able to purchase both forty acre tracts for a total of $36,000 ([40 acres $\times$ $500] + [40 acres $\times$ $400] = $36,000), half to be paid to the trust and half to his mother's estate. Barbara takes the position that if Robert wishes to purchase the interests in the real property held by both of his parents, then he must pay

$36,000 to the trust for the interest which was held by his father, and an equal amount to the estate for the interest which was held by his mother. This is the dispute which we are called upon to decide.

## II. *Scope of Review.*

■ A declaratory judgment action to interpret a will is tried in equity, and our review is de novo. *In re Estate of Anderson,* 359 N.W.2d 479, 480 (Iowa 1984). While we give weight to the trial court's findings of fact, we are not bound by them. *Id.*

## III. *Interpretation.*

■ Robert contends that the language creating the options was ambiguous and that extrinsic evidence must be utilized to determine the testators' intentions. In interpreting wills and testamentary trusts, we are guided by well settled principles: (1) the intent of the testator is the polestar and must prevail; (2) this intent, however, must be derived from (a) all of the language contained within the four corners of the will, (b) the scheme of distribution, (c) the surrounding circumstances at the time of the will's execution and (d) the existing facts; (3) we resort to technical rules or canons of construction only when the will is ambiguous or conflicting or the testator's intent is uncertain. *Anderson,* 359 N.W.2d at 480. In determining intent, the question is not what the testator meant to say, but rather what is the meaning of what the testator did say. *Elkader Prod. Credit Ass'n v. Eulberg,* 251 N.W.2d 234, 238 (Iowa 1979).

■ In searching the will for the testator's intent, the instrument must be considered as a whole and each part given meaning and effect, if possible. *Id.* at 237–38. Extrinsic evidence may be considered by the court in resolving problems of ambiguity. *Anderson,* 359 N.W.2d at 481. Extrinsic evidence is not admissible to vary, contradict or add to terms of the will or to show an intention different from that disclosed by the language of the will. *In re Estate of Kalouse,* 282 N.W.2d 98, 104 (Iowa 1979). Thus, extrinsic evidence may be considered only on issues which are in doubt.

## IV. *Ambiguity of the Will and the Trust.*

Keeping in mind the settled principles, we turn to the question of whether the instruments before us are ambiguous. This must be our first inquiry. *In re Estate of Kiel,* 357 N.W.2d 628, 631 (Iowa 1984). We begin with the trust established by Lawrence's will.

■ Robert claims that the option established in Lawrence's will is patently ambiguous because it does not set out (1) how many acres were involved, or (2) Lawrence's exact interest in the two tracts.

The question of the number of acres involved is not a serious problem. The district court could take judicial notice that each tract contained forty acres. In any event, the parties agree each tract contains forty acres. Even if the number of acres were ambiguous, such an ambiguity would permit only extrinsic evidence which would clarify the true number of acres in the two tracts.

■ Stated succinctly, the terms of the trust permit Robert to purchase all of the "right, title and interest" in the two tracts which Lawrence held and which are now held in trust. This language is not patently ambiguous, despite the fact that the nature of Lawrence's interest in the tracts is not identified. Patent ambiguity occurs when the meaning of a will is, on its face, uncertain, doubtful or obscure. *In re Lepley's Estate,* 235 Iowa 664, 670, 17 N.W.2d 526, 529 (1945). Robert has an option to buy his father's former interest in the two tracts, whatever that interest might have been. The price is set at $500 per acre for one tract and $400 per acre for the other. Since there are forty acres in each tract, the total price for Robert to purchase Lawrence's interest in both tracts is $36,000.

■ Robert urges that the will contains a latent ambiguity in that Lawrence and Emma held the two tracts as tenants in common. When the language of a will is

clear on its face, but some outside matter renders the meaning obscure or uncertain, a latent ambiguity exists. *Bankers Trust Co. v. Allen*, 257 Iowa 938, 944, 135 N.W.2d 607, 611 (1965); *In re Estate of Eickholt*, 365 N.W.2d 44, 47 (Iowa App. 1985). Since the will refers to "my" interest, Robert suggests the calculation of the total purchase price is limited to the testator's separate interest in the real estate, that is, an undivided 20 acres in each 40-acre tract. This argument misapprehends the basic nature of the tenancy in common ownership interest.

In a tenancy in common, each tenant has a separate, distinct and undivided interest in all of the property so held. 4A R. Powell & P. Rohan, *Powell on Real Property* ¶ 601[1], at 50–3 (1991) [hereinafter Powell & Rohan]; 4 G. Thompson, *Commentaries on the Modern Law of Real Property* § 1793, at 137 (1979) [hereinafter Thompson]. No tenant in common can claim any particular portion of the property as his own, to the exclusion of the other tenants; each is entitled to possession and use of the whole. Powell & Rohan at ¶ 603[1], 50–14; Thompson at § 1793, 137. Nor may any tenant in common, as against his co-tenants, convey to a third party any specific portion of the property. Thompson at § 1798, 152. The quality of the cotenants' estates may be different, the shares may be unequal, and the modes of acquisition may be unlike; the only unity is that of possession. *In re Appeal of Delashmutt*, 234 Iowa 1255, 1259, 15 N.W.2d 619, 622 (1944).

The interest of a tenant in common may be transferred, devised or encumbered without the consent of the remaining cotenants. Thompson at § 1795, 145. In such situations, the person acquiring the interest becomes a tenant in common with the remaining tenants. *Id.* at § 1798, 151; Powell & Rohan at ¶ 606[4], 50–38.

Lawrence Rogers held title to the two tracts as a tenant in common. He was entitled to alienate his interest in all eighty acres however he saw fit. As set out in his will, he chose to offer his son an option to buy his interest in the two tracts for the price of $500 per acre for one tract and $400 per acre for the other. His will unambiguously establishes a price of $36,000 to purchase his one-half undivided interest in the two tracts.

This conclusion is supported by the fact that the two wills were not contractual. Emma remained free at all times to alienate her one-half interest in the property. Either prior to or following Lawrence's death, she could have sold her interest in the property or given it away inter vivos. She could have devised her interest to someone other than Robert or allowed it to pass by intestacy. Had she done any of the preceding, Robert would still have been entitled to purchase Lawrence's one-half interest for $36,000. In such an event, Robert would have held the property as a tenant in common with the person or persons who acquired Emma's interest.

This declaratory judgment action was tried in equity. At trial, extrinsic evidence was introduced, subject to objection, suggesting that the true intent of both testators was to allow Robert to purchase both of their interests in the two tracts for a total of $36,000. Since we find that there was no ambiguity, we do not consider this evidence. The testators are presumed to have known the effect of the language in their wills. *In re Estate of Staab*, 173 N.W.2d 866, 872 (Iowa 1970). This presumption is especially true where, as here, the will is drawn up by an experienced scrivener. 80 Am.Jur.2d *Wills* § 1179, at 294 (1975).

"However clearly an intention not expressed in the will may be proved by extrinsic evidence, *the rule of law requiring wills to be in writing stands as an insuperable barrier against carrying the intention thus proved into execution.*" *In re Estate of Kalouse*, 282 N.W.2d 98, 104 (Iowa 1979) (emphasis in original). When the terms of a will or trust are unambiguous, we are precluded from interpreting the terms. *Kiel*, 357 N.W.2d at 630. We will not, from oral testimony, make a will the testator perhaps intended to, but in fact did not, make. *In re Estate*

*of Winslow*, 259 Iowa 1316, 1323, 147 N.W.2d 814, 818 (1967).

**V. *Conclusion.***

While we have focused primarily on Lawrence's will and the trust he created, an analysis of Emma's will, utilizing the same principles, yields the same result; both wills set a purchase price of $36,000 for the undivided half interest each controlled. If Robert desires to exercise his options to purchase both half interests in both tracts, the price will be $72,000.

DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.