# IN THE SUPREME COURT OF IOWA

No. 15–1838

Filed December 23, 2016

Amended March 7, 2017

**MARCIA E. ROLL,**

Appellant,

vs.

**RUSSELL L. NEWHALL,**

Appellee.

Appeal from the Iowa District Court for Butler County, James M. Drew, Judge.

A will beneficiary appeals a district court ruling declaring that another beneficiary's adoption out of his biological family after the execution of a will did not preclude him from inheriting under a provision of the will that identified him by name and class designation. **AFFIRMED.**

Thomas D. Hanson and Melissa A. Schilling of Dickinson, Mackaman, Tyler & Hagen, P.C., Des Moines, for appellant.

Paul C. Peglow and Bethany J. Currie of Peglow, O'Hare & See, P.L.C., Marshalltown, for appellee.

**HECHT, Justice.**

A testator executed a last will and testament devising property to her two adult children—a son and a daughter. After the will was executed but before the testator's death, the son was adopted by a paternal aunt. The testator's daughter filed this action after the testator's death seeking a declaratory judgment establishing that the adoption terminated her sibling's ability to inherit under the will. On cross-motions for summary judgment, the district court concluded the son's adoption out of his biological family did not preclude him from taking under his biological mother's will, which identified him as a beneficiary both by name and by membership in a class. We affirm.

**I. Background Facts and Proceedings.**

Russell Newhall and Marcia Roll are the biological adult children of Marrian Newhall. Marrian executed her last will and testament in 2006. Article II of the will provided,

> In the event my husband does not survive me, all the rest, residue and remainder of my property I give to my children, RUSSELL L. NEWHALL and MARCIA E. ROLL, share and share alike. All references to child or children shall include all children born to or adopted by me after the date this Will is executed.

The will also named Russell and Marcia as executors to serve without bond.

In 2007, Russell was adopted as an adult by his paternal aunt, Janice Anway, who wished to avoid Iowa's inheritance tax on her estate.

Marrian passed away in August 2014. She was not survived by a spouse. As a consequence of the adoption, Russell was Marrian's nephew under the law and her biological son at the time of her death.[1]

Marcia, the executor and a beneficiary of the residue of Marrian's estate, filed this action seeking a declaration that Russell's adoption out of the family precluded him from inheriting under the provisions of Marrian's will.[2] Marcia's petition alleged entitlement to such relief because the will clearly expressed Marrian's intent to leave the property to her "children," and as a consequence of the adoption Russell was not Marrian's child under the applicable law at the time of her death. Russell filed an answer asserting his adoption by Anway did not change his relationship with his parents and that Marrian's intent for him to inherit and serve as coexecutor is clearly expressed in her last will and testament.

In August 2015, Marcia and Russell filed cross-motions for summary judgment. The district court granted summary judgment, concluding Russell could inherit under the terms of Marrian's will despite the adoption because he was clearly named as an individual under the will's provisions and no statute barred him from recovering.

On appeal, Marcia makes two arguments. First, she contends the district court made an error of law in its determination of the testator's

[1]The parties dispute whether Marrian had notice and approved of Russell's adoption and whether Russell maintained a relationship with her after the adoption. While Russell claims he maintained a relationship with his parents after the adoption as before, Marcia asserts "[h]e terminated [the parent–child] relationship" when he was adopted and "just divorced the family." Although she took care of Marrian regularly after Russell's adoption in 2007, Marcia was not aware that her mother ever told anyone Russell was no longer her son.

[2]The parties in this case have been involved in other litigation as well. Today we also file our decision in *Newhall v. Roll*, 888 N.W.2d 636 (Iowa 2016), a partition action filed by Russell against Marcia.

intent. In particular, Marcia asserts the district court misunderstood relevant caselaw and did not take into account the will's language or the facts and circumstances surrounding its execution. Second, Marcia asserts that even if the terms of the will would otherwise permit Russell to inherit despite his adoption by Anway, we should hold—based on public policy—that a beneficiary's right to inherit under a biological relative's will is extinguished when the beneficiary severs his or her legal relationship with that relative through a voluntary adult adoption.

Russell contends his status as a beneficiary under Marrian's will persists even after his adoption because he is a named beneficiary—not merely an unidentified member of a familial class consisting of the testator's children.

## II. Standard of Review.

We review summary judgment rulings for correction of errors at law. *Baker v. City of Iowa City*, 867 N.W.2d 44, 51 (Iowa 2015). "On review, 'we examine the record before the district court to determine whether any material fact is in dispute, and if not, whether the district court correctly applied the law.'" *J.A.H. ex rel. R.M.H. v. Wadle & Assocs., P.C.*, 589 N.W.2d 256, 258 (Iowa 1999) (quoting *Shriver v. City of Okoboji*, 567 N.W.2d 397, 400 (Iowa 1997)). "We . . . view the record in the light most favorable to the nonmoving party and will grant that party all reasonable inferences that can be drawn from the record." *Estate of Gray ex rel. Gray v. Baldi*, 880 N.W.2d 451, 455 (Iowa 2016) (quoting *Cawthorn v. Catholic Health Initiatives Iowa Corp.*, 806 N.W.2d 282, 286 (Iowa 2011)).

## III. Analysis.

By statute, the legal parent–child relationship between Marrian and Russell, an adult, was terminated by the decree of adoption

establishing a new parent–child relationship between Russell and Anway. Iowa Code § 600A.3 (2014) ("[T]ermination of parental rights between an adult child and the child's parents may be accomplished by a decree of adoption establishing a new parent-child relationship."). Although the adoption clearly terminated Russell's rights to inherit from his biological mother under the law of intestate succession, *see id.* § 633.223(1), Marrian died testate. Thus, the question now before the court is whether the adoption by Anway also extinguished Russell's right to inherit under Marrian's will.

**A. General Principles of Will Construction.** In Iowa, the cardinal rule of will construction is that "the intent of the testator is the polestar and must prevail." *In re Estate of Rogers*, 473 N.W.2d 36, 39 (Iowa 1991). In determining the testator's intent, we consider "(a) all of the language contained within the four corners of the will, (b) the scheme of distribution, (c) the surrounding circumstances at the time of the will's execution[,] and (d) the existing facts." *Id.* The court considers the instrument as a whole and tries to give each part meaning and effect. *Id.* Although the effect of a will's language is determined at the date of the testator's death, the intended meaning of the language used is "construed as of the date of its execution." *Benz v. Paulson*, 246 Iowa 1005, 1013, 70 N.W.2d 570, 574 (1955) (quoting *In re Estate of Warren*, 211 Iowa 940, 948–49, 234 N.W. 835, 839 (1931), *abrogated in part on other grounds by In re Estate of Kern*, 274 N.W.2d 325, 327–28 (Iowa 1979)).

The court applies an objective standard when determining the testator's intent. *Rogers*, 473 N.W.2d at 39. We consider "what the testator did say" and "not what the testator meant to say." *Id.* The testator's intended meaning of words controls and is gathered from a

reading of the instrument as a whole. *In re Estate of Roberts*, 171 N.W.2d 269, 271–72 (Iowa 1969). The court will only resort to technical definitions or cannons of construction if the testator's intended meaning is ambiguous, uncertain, or conflicting. *Id.* at 272; *Rogers*, 473 N.W.2d at 39; *see also, e.g.*, *In re Estate of Nicolaus*, 366 N.W.2d 562, 564–65 (Iowa 1985) (interpreting meaning of "issue" used in a will consistently with probate code provisions where intended meaning was uncertain). The court will not use extrinsic evidence of the testator's subjective intent "to vary, contradict[,] or add to terms of the will." *Rogers*, 473 N.W.2d at 39. Testators are presumed to know the legal effect of language in their wills, particularly when the wills are drafted by experienced scriveners. *Id.* at 40.

The court first looks to existing law to resolve questions of ambiguity. *See First Nat'l Bank of Dubuque v. Mackey*, 338 N.W.2d 361, 362 (Iowa 1983) ("[U]nless the term 'legally adopted child' must be deemed to include all adopted persons, [the testator's] intent cannot be ascertained without resort to rules of construction."). If existing law does not resolve the ambiguity, the court turns to rules of construction for guidance. *Id.* The court may also consider extrinsic evidence in resolving the ambiguity. *Rogers*, 473 N.W.2d at 39.

**B. Application of General Principles**. In this case, we find the relevant provision of Marrian's will is ambiguous. The gift "to my children, RUSSELL L. NEWHALL and MARCIA E. ROLL" is capable of multiple meanings because it describes the beneficiaries as members of a class and as individuals. The provision could therefore be understood to mean Marrian intended a class gift or an individual gift. If she intended a class gift, the naming of Russell and Marcia could have constituted a list of the members of the benefitted class at the time the will was

executed. If Marrian intended instead to make individual gifts to Russell and Marcia, then the class reference (my children) could be understood as merely a means of specifying which "Russell L. Newhall" and which "Marcia E. Roll" were beneficiaries.

Marcia contends the will evidences Marrian's intent to make a class gift. We find no evidence in this record showing Marrian actually considered before executing her will whether her parent–child relationship with Russell would be legally extant at the time of her death. Therefore, in resolving the ambiguity we consider whether the relevant testamentary provision is deemed an individual or class gift under existing law.

Marcia also asserts the mere naming of individuals within a class does not override a class designation. She contends the gift "to my children, RUSSELL L. NEWHALL and MARCIA E. ROLL" is properly characterized as a class gift instead of an individual gift. She posits that only the class-gift characterization gives meaning to the word "children" in the relevant testamentary provision. Russell is precluded from inheriting, Marcia contends, because the gift is to a class of Marrian's "children," and Russell was Marrian's nephew—not her child—after his 2007 adoption by Anway.

Russell responds that the law in Iowa is well-settled that a bequest identifying its recipients by name and by class is an individual gift. Marcia disagrees, contending this case is one of first impression on the legal effect of an adult beneficiary's adoption occurring after a will's execution.

Under Iowa law, a class gift is defined as "a gift to two or more persons *who are not named* and have one or more characteristics in common by which they are indicated *or who answer to a general*

*description.*"    *Elliott  v.  Hiddleson*,  303  N.W.2d  140,  142  (Iowa  1981) (emphasis added) (quoting *In re Estate of Kalouse*, 282 N.W.2d 98, 101 (Iowa 1979)).  An individual gift designates beneficiaries by name.  *See In re French's Estate*, 242 Iowa 113, 123, 44 N.W.2d 706, 712 (1950).

The rule that a bequest or devise to persons who are designated by name  and  by  class  is  a  gift  to  individuals  and  not  a  class  is  well-established  in  our  caselaw.    In  *In  re  Estate  of  Carter*,  we  considered whether a bequest to three of the testator's grandchildren was a gift to a class or to the three grandchildren who were named in the testamentary provision.    203  Iowa  603,  604–05,  213  N.W.  392,  394  (1927).    The determination  was  necessary  because  one  of  the  named  grandchildren predeceased the testator and the court was therefore presented with the question of whether that grandchild's heirs or her two siblings would inherit  a  share  of  the  testator's  estate.    *Id.*  at  604–05,  213  N.W.  at  393–94.  In adopting the rule that a gift to named individuals prevails over a class description of beneficiaries, we reasoned:

> It seems to be . . . well settled that, where the beneficiaries are designated by name, it prima facie indicates an intention to give to them only as individuals.  Where legatees are named as individuals and also described as a class, and there is nothing more to show the testator's intention, the construction is that the gift by name constitutes a gift to the individual, to which class description is added by way of identification.  The court attaches great importance to the designation  of  the  devisees  severally  by  name,  and  a provision that they shall share the gift in a fixed and definite proportion.

*Id.* at 605, 213 N.W. at 394.  Accordingly, we concluded the heirs of the grandchild  who  predeceased  the  testator  inherited  the  share  of  their deceased mother.  *Id.*

In *Friederichs v. Friederichs*, a will left a remainder interest in real estate "to [the testator's] brothers and sisters" who were identified by

name. 205 Iowa 505, 505–06, 218 N.W. 271, 272 (1928). Because two of the testator's siblings named in the testamentary provision had died before the will was executed, the court was called upon to decide whether the testator intended an individual or a class gift to his siblings. *Id.* The district court concluded the devise to the siblings who predeceased the testator lapsed in favor of those who survived. *Id.* at 506, 218 N.W. at 272. Reversing the judgment and decree on appeal, we concluded the testator—by naming the beneficiaries as individuals—manifested a prima facie intent for an individual gift and not a class gift. *Id.* at 508, 218 N.W. at 273. Finding no contrary testamentary intent in the will, we determined the devise to the testator's deceased siblings "did not lapse, but passed to [the deceased siblings'] heirs." *Id.*

Although the challenge to Russell's status as a beneficiary under Marrian's will does not turn on whether he survived the testator, we find the reasoning of *Carter* and *Friederichs* persuasive here. Read together, *Carter* and *Friederichs* stand for the proposition that a gift identifying a beneficiary both as an individual and by class description is a valid gift to a named individual in the absence of a testator's contrary intent. In both cases, we upheld a gift to a beneficiary who was named individually and described by class even though at the time of the testator's death, the beneficiary was no longer a member of the class for purposes of our rules of inheritance. We concluded in each case that naming a beneficiary as an individual and by class indicates a prima facie intent to make an individual gift.

We reaffirm that rule in this case. Russell was named as a beneficiary in the will individually and as a member of a class of "children." As such, he is the beneficiary of an individual gift in the absence of Marrian's contrary intent; his nonmembership in the class of

Marrian's children at the time of her death is not dispositive. Accordingly, we conclude the testamentary gift to Russell survived the adoption by Anway unless there is sufficient evidence in the record to establish Marrian intended for her beneficiaries to include only those of her children that had not been adopted-out prior to the time of her death.

On appeal, Marcia makes three arguments supporting her contention that Marrian intended to make a gift to only those of her children who were her children as defined by the law at the time of her death. First, Marcia contends Marrian's intention to make a class gift is manifested by her specific testamentary directive that "[a]ll references to child or children shall include all children born to or adopted by me after the date this Will is executed." Put another way, Marcia advances the argument that Marrian's inclusion of subsequently adopted-in children and her failure to mention subsequently adopted-out persons among the class of beneficiaries suggests a testamentary intent to exclude those who might be adopted out.

We disagree. Here, there is ample evidence within the four corners of the will that Marrian intended to give to Russell and Marcia as individuals. Notably, although Marrian did not specify that adopted-out children are included within the class of "children," she also did not specify they are not. She instead expressly defined the term "children" as including Russell. In this context, the definition of "children" is not necessarily limited to the technical, legal definition of the term. *See Gilbert v. Wenzel*, 247 Iowa 1279, 1282, 78 N.W.2d 793, 795 (1959) (noting that terms in a will are "not always used in [their] strict legal sense but [their] meaning in a particular instance is determined from the will and surrounding circumstances").

Moreover, in addition to providing that Russell and Marcia were to be cobeneficiaries of the residue of the estate, the will appointed Russell and Marcia as coexecutors. In appointing the two as coexecutors, the will described them only as individuals and not as members of a class. Viewed together, the two provisions of the will naming Russell and Marcia—one concerning the residue and the other concerning the appointment of coexecutors—support the conclusion that the testator's primary intent was to provide for her biological children, Russell and Marcia, as individuals. There is little reason to think Marrian would have conditioned Russell's inheritance on his legal status as her child at the date of her death while nominating him as a coexecutor without regard to their legal relationship at the time of her death. Thus, Marrian's expressed intent to include as beneficiaries those who might later become her children is not probative of her intent to exclude named beneficiaries who were her biological offspring, but who might later be adopted by someone else.

Second, Marcia contends the district court's determination that the gift to Russell was an individual gift renders the word "children" meaningless in the will. Contrary to Marcia's assertion, the class description does not become meaningless if the gift is characterized as an individual gift. As we said almost 100 years ago, when testamentary gifts are directed to persons described by name and by class, the class description serves a purpose. *Carter*, 203 Iowa at 605, 213 N.W. at 394; *see also In re Murphy's Estate*, 106 P. 230, 233 (Cal. 1909). The designation of "children" indicates—if there should be a dispute—which Russell L. Newhall was the intended beneficiary. Although there is no evidence Marrian anticipated such a dispute about identity in this case, the designation of "children" could be especially important in families

where people share the same name. For example, if there were two people named Russell L. Newhall that claimed the right to inherit under her will, one being the testator's nephew and the other her son, there would be no question about which Russell L. Newhall was the intended beneficiary. Further, the word "children" is not rendered meaningless when not understood as a dispositive identifier in this case because the word "children" can have legal, practical, and biological meanings. In this case, the parties only agree that Russell is no longer the testator's child in the strictly legal sense of the word.

Finally, Marcia contends the district court's inclusion of adopted-out persons within the class of "children" eligible to inherit assigns a different meaning to "children" than is set forth in the probate code. *See* Iowa Code § 600A.3; *id.* § 633.223. Although she is correct that adopted-out individuals are no longer children for purposes of intestate succession under Iowa law, this is not a case of intestate succession.

Our conclusion in this case is consistent with the decisions of other courts allowing adopted-away persons to take under the terms of a biological relative's will. *See, e.g.*, *In re Estate of Lippincott*, 532 N.Y.S.2d 1021, 1023 (Sur. Ct. 1988) (determining an adopted-out child who was specifically named as one of the testator's grandchildren was entitled to take under a residuary gift to the testator's grandchildren);[3] *Seeley v. Bedillion*, 260 N.E.2d 639, 641–42 (Ohio Ct. Com. Pl. 1969) (holding an adopted-away child was entitled to a share of a testamentary trust where the child was specifically named in the instrument as a member of an

---

[3]Marcia claims *Lippincott* should be distinguished because the testator in that case made the gift long after the adoption and in knowledge of it, and the gift met the conditions of a statute precluding gifts to adopted-away individuals unless certain conditions were met. Although those facts limit the persuasive force of *Lippincott,* we conclude the case is still supportive of Russell's position.

open class of children and a statute provided it did not bar adopted-out individuals from taking under a biological relative's will in which the adopted-out individual is clearly identified); *In re Schaeffer Estate*, 83 Pa. D. & C. 281, 281–83 (Orphans' Ct. 1952) (holding an adopted-out child was entitled to take under a clause that left the residue of an estate "to my children" and thereafter named them); *see also* Christopher H. Hall, Annotation, *Adoption as Precluding Testamentary Gift Under Natural Relative's Will*, 71 A.L.R.4th §§ 2, 8, at 378, 398–99 (1981).

**C. Public Policy.** Marcia contends in the alternative that this court should hold—as a matter of public policy—an adult beneficiary's right to take under a biological relative's will terminates upon the beneficiary's adoption. She raises two justifications for such a rule. First, she posits the rule would discourage people from using the adoption code to manipulate the rules of inheritance or to avoid paying inheritance taxes. Second, she contends such an exception would be consistent with Iowa's "strong public policy" to sever "all legal relationships between the adopted person and his biological relatives, including the adopted person's right to inherit from his biological relatives."

1. *Preventing manipulation of the rules of inheritance.* Marcia points out we have already determined there is no public policy reason favoring adult adoptions that are "primarily for the purpose of creating an heir." *Schaefer v. Merchs. Nat'l Bank of Cedar Rapids*, 160 N.W.2d 318, 323 (Iowa 1968). She posits public policy would therefore be advanced by a rule discouraging adult adoptions as a mechanism for manipulating Iowa's inheritance and tax rules.

Marcia and Russell agree that their paternal biological aunt adopted Russell to avoid paying inheritance taxes, among other reasons.[4] Russell argues, however, that no offense to public policy resulted from his inheritance from Marrian.  While he did not pay inheritance taxes on the land he inherited from Anway, he has already paid inheritance tax on the property inherited from Marrian.

The court has the power to prevent a gift if it violates public policy. *Roberts*, 171 N.W.2d at 271 ("[A] testator has the legal right to make any distribution of . . . property . . . not contrary to law or public policy." (quoting *In re Estate of Pottorff*, 216 Iowa 1370, 1373, 250 N.W. 463, 465 (1933)).  If the testamentary gift from Marrian to Russell violates public policy, the court has the power to preclude Russell from receiving it.  *See Schaefer*, 160 N.W.2d at 323 (precluding a beneficiary under a trust from receiving property as an heir because her adoption into the family was for the purposes of manipulating inheritance laws).

We conclude the gift from Marrian to Russell does not subvert Iowa's inheritance laws.  The testamentary gift from Marrian to Russell is a common one from a mother to her biological child.  The question of the tax treatment of that gift is not before us.

2. *General public policy.*  Marcia also contends a public policy prohibiting adult adoptees from inheriting under their biological parents' wills should be recognized because it would be *consistent* with other public policy of this state.  The public policy she urges is based on the

---

[4]Marcia alleges in her brief on appeal that Russell cut ties with Marrian after she executed her will and after he received a substantial "inheritance" from his parents through an inter vivos gift.  We do not credit these factual allegations because they are not supported in the record on summary judgment.

proposition that all legal relationships between an adopted-out individual and his or her biological relatives are severed by adoption.

She cites our decision in *Teachout v. Forest City Community School District,* 584 N.W.2d 296 (Iowa 1998) as authority for this policy-based argument. In *Teachout,* we concluded a statute's forceful language evidenced a public policy protecting at-will employees who report child abuse. *Id.* at 300–01. Marcia contends sections 600A.3, 633.223, and 633.271 of the Iowa Code, together with Iowa's Tax Code, reveal in a similarly forceful way a public policy against inheritance by persons adopted-out as adults from their biological families.

Section 600A.3 of the Iowa Code extinguishes the parent–child relationship between an adopted-out adult and that individual's biological parents. Iowa Code § 600A.3. Section 633.223 of the Iowa Code provides that with few exceptions, "a lawful adoption extinguishes the right of intestate succession" between the adoptee and his or her biological parents. *Id.* § 633.223. Section 633.271 disinherits ex-spouses from taking under the terms of their ex-spouse's will. *Id.* § 633.271. Marcia cites the Iowa Tax Code generally for the proposition that adopted-out individuals must pay inheritance taxes on gifts from their biological parents while children whose legal relationships were not terminated do not. Her argument seems to be that public policy supports the legislature's grant of a tax benefit in this context to persons who are recognized under the law as a decedent's children, but disfavors a decedent's biological children who have been adopted out.

Russell asserts that because sections 633.223 and 633.271 only apply to intestate succession and dissolution of marriages respectively, "the legislature kept open the possibility that a person adopted out of the family could receive [testamentary] gifts from a biological parent." He

argues that the court "should not create new law to prevent a <u>named</u> beneficiary from receiving a gift, devise or bequest under a Will simply because the legal parent-child relationship was subsequently severed." We agree.

As noted above, testators in Iowa have "the legal right to make any distribution of . . . property . . . not contrary to law or public policy." *Roberts*, 171 N.W.2d at 271 (quoting *Pottorff*, 216 Iowa at 1373, 250 N.W. at 465). We find no basis for concluding Iowa's public policy prevents testators from leaving property to their biological children who have been adopted away, whether as a child or an adult.

## IV. Conclusion.

The testamentary gift to Russell as a named beneficiary and as a member of a class (the testator's children) did not fail because of his adoption as an adult after the testator executed her will. We therefore affirm the judgment.

**AFFIRMED.**