# IN THE COURT OF APPEALS OF IOWA

No. 21-0742
Filed April 27, 2022

**RICHARD ROSS and LINDA ROSS,**
        Plaintiffs-Appellants,

**vs.**

**DOUGLAS WAYNE WALKER and WEST BEND MUTUAL INSURANCE COMPANY,**
        Defendants-Appellees.
_____

        Appeal from the Iowa District Court for Johnson County, Paul D. Miller,

Judge.


        Plaintiffs appeal a summary judgment order dismissing their claims.

**REVERSED AND REMANDED.**


        Matthew R. Denning of Spaulding & Shaull, P.L.C., Des Moines, for

appellants.

        Michael J. Moreland of Harrison, Moreland, Webber & Simplot, P.C.,

Ottumwa, for appellee Douglas Walker.

        Meredith Rich-Chappell, Brenda K. Wallrichs, and James P. Craig of

Lederer Weston Craig PLC, Cedar Rapids, for appellee West Bend Mutual

Insurance Company.


        Considered by Vaitheswaran, P.J., and Tabor and May, JJ.

**MAY, Judge.**

This case arises from an accident and its aftermath. About 2:30 a.m. on April 25, 2019, Douglas Walker drove westbound on Interstate 80 in the right lane. It was foggy out. Walker attempted to make a U-turn using the median cross-over. As he crossed traffic in the left lane, he was struck by a driver in the left lane. Their accident closed both westbound lanes. Traffic backed up. Then, about twenty minutes later, Richard Ross, who was also driving in the westbound lane, approached the stopped traffic and ran into the back of another vehicle.

Ross and his wife brought this personal injury case against Walker. Their petition included an underinsured motorist claim against West Bend Mutual Insurance Company.

Both defendants sought summary judgment. They claimed Ross's accident was beyond the scope of liability associated with Walker's U-turn attempt. The district court granted the motion and dismissed the Rosses' claims.

The Rosses appeal the district court's scope-of-liability determination. "We review summary judgment rulings for correction of errors at law." *Roll v. Newhall*, 888 N.W.2d 422, 425 (Iowa 2016). Summary judgment is appropriate when the file shows "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Iowa R. Civ. P. 1.981(3). "We review the evidence in the light most favorable to the nonmoving party." *Stevens v. Iowa Newspapers, Inc.*, 728 N.W.2d 823, 827 (Iowa 2007).

"An actionable claim of negligence requires the existence of a duty to conform to a standard of conduct to protect others, a failure to conform to that standard, proximate cause, and damages." *Thompson v. Kaczinski*, 774 N.W.2d

829, 834 (Iowa 2009) (quotations and citation omitted). Here, the parties dispute causation, which "has two components: cause in fact and legal cause." *Id.* at 836. The legal cause "component requires a policy determination of whether 'the policy of the law must require the defendant to be *legally responsible* for the injury.'" *Id.* (citation omitted). To guide this determination, our supreme court has adopted the scope-of-liability standard from the Restatement (Third) of Torts. *Id.* at 839. This standard limits an actor's liability "to those physical harms that result from the risks that made the actor's conduct tortious." *Id.* at 838 (citation omitted).

"The scope-of-liability issue is fact-intensive as it requires consideration of the risks that made the actor's conduct tortious and a determination of whether the harm at issue is a result of any of those risks." *Id.*

When, as in this case, the court considers in advance of trial whether

> the plaintiff's harm is beyond the scope of liability as a matter of law, courts must initially consider all of the range of harms risked by the defendant's conduct that the jury *could* find as the basis for determining [the defendant's] conduct tortious. Then, the court can compare the plaintiff's harm with the range of harms risked by the defendant to determine whether a reasonable jury might find the former among the latter.

*Id.* (citation omitted). This "standard 'appeals to intuitive notions of fairness and proportionality by limiting liability to harms that result from risks created by the actor's wrongful conduct, but for no others.' It also is flexible enough to 'accommodate fairness concerns raised by the specific facts of a case.'" *Id.* (citations omitted).

Applying this standard here, we "consider all of the range of harms risked by" Walker when he attempted to make a U-turn across the left lane of interstate

traffic on a foggy night. *See id.* (citation omitted). Certainly, the initial collision was within the range of harms risked. But we think it would be premature to truncate Walker's scope of liability to just that collision. A "jury *could* find" a wider "range of harms risked by" Walker's actions. *See id.* (citation omitted). A jury could find that a driver who attempts to complete a U-turn across interstate traffic on a foggy night has risked not only (1) an initial collision but also (2) a resulting pile-up of vehicles on the interstate and (3) an approaching driver's failure to avoid running into those piled-up vehicles. So a jury could find the harm in this case resulted from the risks that made Walker's conduct negligent. *See id.* at 849. And we must conclude the "district court erred in deciding the scope-of-liability question as a matter of law." *See id.*

We reverse the district court's dismissal of the claims and remand for further proceedings.

**REVERSED AND REMANDED.**