# IN THE SUPREME COURT OF IOWA

No. 09–1105

Filed August 19, 2011

**IN THE MATTER OF THE ESTATE OF RALPH ROETHLER,** Deceased,

**KENT LEWIS** and **BECKY LEWIS**,

Appellees.

vs.

**ANGELA M. KUEHN, CHERYL L. UPTON, JACQUELYN F. BETSWORTH, DANIEL W. ROETHLER, MARY ANNE JAMES, JAMES F. ROETHLER, DONALD A. ROETHLER, CONSTANCE L. DUKE, GERALD E. ROETHLER, KATHLEEN S. GOOD, JOHN M. ROETHLER, DANIEL LEE HOMAN,** and **FRANK E. HOMAN,**

Appellants.

**R. STEPHEN HANKENS,**

Intervenor-Appellee.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Cherokee County, Nancy L. Whittenburg, Judge.

Petitioners seek further review of court of appeals decision reversing district court order to reopen estate. **COURT OF APPEALS DECISION VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

Frank J. Comito of Neu, Minnich, Comito & Neu, P.C., Carroll, Erin E. McCullough of the Law Offices of Erin E. McCullough, Lake View, and David P. Jennett, Storm Lake, for appellees.

George W. Wittgraf of Sayre, Wittgraf & Meloy, Cherokee, for appellants.

Steven T. Roth of Roth Law Office, Storm Lake, for intervenor-appellee R. Stephen Hankens.

**ZAGER, Justice**.

In this appeal, we must determine when the district court can properly reopen a probate estate under Iowa Code section 633.489 (2009). Becky and Kent Lewis ("Lewises"), plaintiffs, sought to reopen Ralph Roethler's estate to allow them to exercise a "first right to purchase" eighty acres of farmland. The executor of the estate did not notify the Lewises that the will contained this right during the administration of this estate. The district court held the Lewises met the statutory grounds set out in section 633.489 to reopen Ralph Roethler's estate. The court of appeals reversed, holding the Lewises' petition to reopen was time-barred under section 633.488, which controls when an estate's final accounting and settlement agreement may be reopened. On further review, we find the Lewises' petition to reopen satisfied the statutory grounds set forth in section 633.489 to reopen an estate. We also find the district court properly construed the will to permit the Lewises to exercise their first right of purchase irrespective of the executor's intent to sell the land. Accordingly, the decision of the court of appeals is vacated, and the district court's judgment is affirmed.

## I. Background Facts and Proceedings.

In 1987, the Lewises entered into a lease to farm two parcels of property owned by Ralph and Marjorie Roethler. One parcel was eighty acres owned solely by Ralph. The other parcel was 160 acres owned solely by Marjorie. The Roethlers lived in a home in Aurelia, owned by Ralph. The Lewises and their children also rented the farmhouse located on Marjorie's parcel. This arrangement continued through 1994. During this time, the relationship between the Lewises and the Roethlers grew close. The Roethlers had no children, but Marjorie baked birthday cakes for the Lewises' children. Kent Lewis made improvements to the

farmstead, and the Roethlers offered the Lewises other considerations like interest free loans and a discounted vehicle.

On February 1, 1994, Ralph executed his last will and testament. Attorney Stephen Hankens drafted the will. Paragraph V of the will provided:

> V. I herein give Kent Lewis and Becky Lewis the first right of purchase to the following described real estate, to-wit:
>
> 80 Acres in Diamond Township, Section One; at the appraised value in the Estate. This right to purchase shall be given them for a period of four months from my date of death. Notice of said right to purchase shall be filed in my Estate in writing.

The eighty-acre parcel of farm real estate listed in section V is the subject of this dispute. At the time of Ralph's death, it was valued at $140,600.

The Lewises always intended on purchasing farmland of their own. Toward the end of 1994, the Lewises purchased ten acres of their own and informed Ralph and Marjorie they would be moving out of the farmhouse. After the Lewises moved off the property, they also stopped farming the Roethlers' land. On December 13, 1994, the Roethlers contracted with Neal and Kathleen Pearson to rent, live on, and farm their two parcels. After the Lewises moved off of the acreage, their relationship with the Roethlers grew apart.

On July 3, 1999, Ralph died. The Lewises, along with three other families that had rented from the Roethlers, were listed as an "honorary family" on the funeral program. The Lewises attended the funeral. The Lewises testified Kent was a pallbearer, but he was not listed as a "casketbearer" on the funeral program, and Ralph's nephew said Kent was not a pallbearer.

Ralph's will was admitted to probate on July 19, 1999. The notice of probate was published in the local newspaper with a second

publication date of August 2, 1999. Pursuant to the notice, any claims against the estate would be barred if not filed within four months. Also, an affidavit of mailing notice was given to all the residual beneficiaries ("the beneficiaries") who are defendants in this appeal. No notice was mailed to the Lewises despite paragraph V of Ralph's will, which specifically named the Lewises. Marjorie was named the executor, and the will awarded her a life estate in all of Ralph's real property, with the remainder to the beneficiaries. Hankens was the attorney for the estate. Hankens filed the final report in October 1999. The report of referee approved the final report, subject to a minor tax issue. The final report was approved on November 22, 1999, prior to the claims-bar date. Title to the eighty acres of real estate was changed the next day to reflect Marjorie's life interest and the beneficiaries' remainder interest.

The Lewises were not made aware by the attorney for the estate, the executor of the estate, or any other party that Ralph's will specifically named them or that the will was being probated.

Marjorie passed away in 2008. The Lewises did not attend the funeral. During the probate of her estate, the beneficiaries contracted to sell Ralph's eighty acres to Neal and Kathy Pearson for the appraised value of $408,000. A title opinion performed on the real estate discovered Ralph's probate file did not contain a notice showing the Lewises waived their option to purchase the subject real estate as required under Ralph's will. The Pearsons' attorney sent the Lewises a letter asking them to waive their option to purchase Ralph's eighty acres. This was the first time the Lewises were apprised that Ralph's will afforded them a first right to purchase Ralph's eighty-acre farm. The Lewises indicated they would have been interested in purchasing the

eighty-acre farm and had the financial capacity to purchase the land in 1999.

On June 23, 2008, Kent Lewis filed a petition to reopen Ralph's estate. The beneficiaries resisted. After a hearing, the district court ordered the estate reopened under Iowa Code section 633.489 to determine whether the Lewises had a valid option to purchase. Hankens, who was now a defendant in a negligence action filed against him by the Lewises, was allowed to intervene.

Trial was held on May 27, 2009, to construe Ralph's will and determine whether Ralph's will provided the Lewises a valid first right to purchase Ralph's eighty acres. The district court held Ralph's will gave the Lewises an option to purchase Ralph's eighty acres, irrespective of Marjorie's decision to sell the land.

The beneficiaries appealed. The case was transferred to the court of appeals. The court of appeals determined the district court abused its discretion in reopening the estate because the Lewises were time-barred under Iowa Code section 633.488. The court of appeals therefore did not have to reach the will construction issue. The Lewises petitioned for further review, which we granted.

## II.  Standard of Review.

A petition to reopen an estate requires the court to engage in a two-step decision process. First, the district court must make a preliminary determination whether the plaintiff has asserted a permissible reason for reopening the estate. *In re Estate of Warrington*, 686 N.W.2d 198, 202 (Iowa 2004). This determination is governed by Iowa Code sections 633.487, 633.488, and 633.489. We review the district court's preliminary decision as to whether to reopen the estate under section 633.489 for abuse of discretion. *In re Estate of Witzke*, 359

N.W.2d 183,184–85 (Iowa 1984). The district court abuses its discretion when it exercises its discretion "on grounds clearly untenable, or to an extent, clearly unreasonable." *In re Estate of Lynch*, 491 N.W.2d 157, 161 (Iowa 1992).

Once reopened, the district court must determine on the merits whether the plaintiffs are entitled to the relief they seek. *Warrington*, 686 N.W.2d at 202–04. Probate matters are tried in equity, and the district court's ruling on the merits is reviewed de novo. *Id.* at 202. "Under a de novo standard of review, we are not bound by the trial court's conclusions of law or findings of facts, although we do give weight to factual findings, particularly when they involve the credibility of witnesses." *Id.*

### III. Issues.

First, we must determine whether the district court abused its discretion in reopening the estate.[1] Second, if the district court properly reopened the estate, we must review the district court's holding that the will provided the Lewises a right to purchase the property within four months of Ralph's death. Third, if the Lewises have a right to purchase the land, we must determine whether they must pay the current value for the eighty acres, not the land's value at the time of the initial probate.

### IV. District Court Did Not Abuse Its Discretion In Reopening Estate.

The beneficiaries assert the district court abused its discretion in reopening the estate because it applied section 633.489 when making its

---

[1]The Lewises also allege in their further review materials that time-barring their claim under section 633.488 violates procedural due process. They did not make this argument in the district court nor did they argue it on appeal. Only after the court of appeals' adverse ruling do the Lewises allege this alternative argument. Accordingly, the argument is waived. *See State v. McCright*, 569 N.W.2d 605, 607 (Iowa 1997).

determination to reopen the estate. The beneficiaries argue the district court should have applied section 633.488 that time-bars the Lewises' claim.

**A. Background.** Iowa Code sections 633.487, 633.488, and 633.489 govern when an estate can be reopened, but only sections 633.488 and 633.489 are relevant in this matter. Section 633.488 states:

> Whenever a final report has been approved and a final accounting has been settled in the absence of any person adversely affected and without notice to the person, the hearing on such report and accounting may be reopened at any time within five years from the entry of the order approving the same, upon the application of such person, and, upon a hearing, after such notice as the court may prescribe to be served upon the personal representative and the distributees, the court may require a new accounting, or a redistribution from the distributees. In no event, however, shall any distributee be liable to account for more than the property distributed to that distributee. If any property of the estate shall have passed into the hands of good faith purchasers for value, the rights of such purchasers shall not, in any way, be affected.

Iowa Code § 633.488. Section 633.488 thus allows adversely affected, interested persons who did not receive notice of the estate's final report and accounting, a five-year window to ask for a new accounting, settlement hearing, or redistribution. We have little case law construing this provision.

Section 633.489 states:

> Upon the petition of any interested person, the court may, with such notice as it may prescribe, order an estate reopened if other property be discovered, if any necessary act remains unperformed, or for any other proper cause appearing to the court.

Iowa Code § 633.489. This provision permits any interested party to reopen the estate if the party can show (1) new property, (2) a "necessary act" remains, or (3) "any other proper cause" exists. *Id.*

There is more case law applying section 633.489. In *Witzke*, the plaintiffs sought to reopen the estate to seek rescission of a real estate sale made during probate because the administrator allegedly misrepresented the boundaries of the property sold to them. *Witzke*, 359 N.W.2d at 184. We reasoned " 'necessary act' in section 633.489 refers to an act that is required by law of the administrator in order to properly close the estate." *Id.* We concluded this ground did not apply, as rescission of a sale was not needed to close the estate. *Id.* We also reasoned "any other proper cause" permits "the district court to exercise discretion in considering a petition that alleges a cause for reopening other than the two causes specifically enumerated." *Id.* at 185. We determined the district court did not abuse its discretion by declining to reopen the estate because the district court reasonably determined that holding the estate liable for an administrator's fraud was an undesirable reason to reopen the estate. *Id.*

In three subsequent cases, we have reopened the estate under section 633.489. In *Ritz v. Selma United Methodist Church*, 467 N.W.2d 266 (Iowa 1991), the plaintiffs sought to reopen the estate after $24,000 in new property was found buried underneath a structure that had been abandoned by the estate. *Ritz*, 467 N.W.2d at 268. The district court concluded the plaintiffs were time-barred under section 633.488. *Id.* at 269. We reversed, finding the plaintiffs' claim was governed by section 633.489, which expressly authorizes reopening an estate if new property is found. *Id.* at 270. In *Lynch*, we reversed the district court and concluded the estate should be reopened to recalculate executor fees.

*Lynch*, 491 N.W.2d at 160–61. The executor, a bank, mistakenly believed a marital trust was part of the gross estate and subject to Iowa inheritance tax which thereby increased their fees. *Id.* We noted "equitable principles" favored reopening the estate to prevent the bank from profiting from its mistake at the expense of beneficiaries. *Id.* We later cited *Lynch* for the proposition that "[t]he correction of mistakes made by an executor may constitute proper cause to reopen an estate." *Warrington*, 686 N.W.2d at 205 (citing *Lynch*, 491 N.W.2d at 161). Finally, in *Warrington*, the deceased's wife sought to reopen the estate to sell a remainder interest in real property to generate cash for her support. *Id.* at 200–01. We found this was a "proper cause" to reopen the estate. *Id.* at 205. We also found the beneficiaries' argument that section 633.488 created a statutory bar to plaintiff's claim "lacking in merit" and reversed the district court's decision not to reopen the estate. *Id.*

**B. Reconciliation of Provisions and Cases.** In our only attempt to distinguish between sections 633.488 and 633.489 we stated:

> Section 633.488 contemplates a reopening of matters which have been previously considered in the final accounting, distribution, and settlement order. Section 633.489, on the other hand, is aimed at reopening a closed estate for the purpose of administering property omitted from the inventory or performing other necessary acts which were not performed during the original administration.

*Ritz*, 467 N.W.2d at 270. The provisions seem to concern two distinct scenarios. Section 633.488 permits distributees, not given notice of the final report, to have a hearing to reopen the accounting to ensure the estate was properly accounted, settled, and distributed. Section 633.489 governs when plaintiffs seek to readminister or structurally change the estate's administration in a way not contemplated during probate, as

evidenced by its application in cases of newly found property. We reach this conclusion for a number of reasons.

First, the remedy each section affords supports this distinction. The remedy under section 633.488 is limited: "[T]he hearing on such report and accounting may be reopened . . . [and] the court may require a new accounting, or a redistribution from distributees." Iowa Code § 633.488. Section 633.488 only authorizes the court to hold another final report hearing, order new accounting, or order redistribution amongst the distributees, but it does not authorize the court to perform property transactions or other substantial acts. *Id.* In contrast, section 633.489 broadly authorizes the court "to administer any additional property or to perform other such acts as may be deemed necessary." *Id.* § 633.489.

Second, section 633.488's time bar, and section 633.489's indefinite application support the articulated distinction. If section 633.488 applies to previously considered matters in which the final report was approved and "settled in the absence of . . . and without notice to" the complaining party, then a five-year statute of limitations is logical. *Id.* § 633.488. Conceivably, the complaining party made his claim, but was not made a party to the resolution at final settlement. This party would be aware of the probate and on notice, making a five-year time-bar apposite. Section 633.489 applies where future events require administration of matters not considered in the final report, and a time-bar is inconsistent with this purpose.

Third, our cases also support this distinction. In cases applying section 633.489, the estates were reopened to reinventory property, to perform acts not considered in the original administration, or to perform acts more substantial than just distribution amongst distributees—

(1) *Ritz* reopened the estate upon finding $24,000 in new property, (2) *Lynch* reopened the estate to reduce improperly awarded executor fees, and (3) *Warrington* reopened the estate to sell a remainder property interest for support of the decedent's wife. In each of these cases, plaintiffs sought to perform an act that administrators did not contemplate in the final accounting, distribution, and settlement order. Moreover, these actions required more than simply redistributing property amongst distributees, as contemplated in section 633.488.[2]

The court of appeals drew a distinction between sections 633.488 and 633.489 on a different basis—whether the plaintiffs received notice of probate. Arguably, this inference is supported by *Moser v. Brown*, 249 N.W.2d 612 (Iowa 1977), as we reasoned that, "[s]ince Moser received no notice[,] he had five years from the date of the closing to petition for reopening" under section 633.488. *Moser*, 249 N.W.2d at 615.

Distinguishing the two provisions on the basis of notice, however, is not the correct approach in reviewing the statutes. Section 633.489 is not defined in terms of notice. The provision simply says the district

---

[2]In *Moser v. Brown*, 249 N.W.2d 612 (Iowa 1977), we cited to section 633.488 as authority for reopening the estate to allow Moser to continue his personal injury lawsuit against the estate. *Moser*, 249 N.W.2d at 612. Moser brought suit against Brown who died shortly thereafter. *Id.* at 614. Moser substituted the executors of Brown's estate as defendants, but the executors closed Brown's estate without ever providing the plaintiff notice. *Id.* We noted Moser's claim was not cut off by the estate's closing because he was entitled to notice of the estate's closing. *Id.* at 615. We cited to section 633.488, concluding: "Since Moser received no notice he had five years from the date of the closing to petition for reopening." *Id.* Our conclusory reasoning creates an inference that the application of section 633.488 is tied solely to notice. This inference is inappropriate for several reasons. First, Moser petitioned to reopen the estate three months after the estate closed, making the five-year time-bar inapplicable. *Id.* at 614. Therefore, the court had no reason to intensely analyze whether sections 633.488 or 633.489 applied. Second, Moser predates *Witzke*, *Ritz*, *Lynch*, and *Warrington* which give the relevant guidance on section 633.489 claims applicability. Third, Moser involves a factual situation where the claimant made a valid claim against the estate, but was merely excluded from final settlement—a scenario contemplated in section 633.488 and unrelated to notice. Moser, unlike the Lewises, was aware of his claim against the estate during the estate's administration.

court "may" reopen an estate "if other property be discovered, if any necessary act remains unperformed, or for any other proper cause." Iowa Code § 633.489. Notice, or the lack thereof, plays no part in this provision. Section 633.489 simply applies if some future happenstance or finding, unattended to during probate, requires the estate to be reopened.

**C. Beneficiaries' Section 633.488 Good-Faith-Purchaser Argument Is Not Applicable.** The beneficiaries argue section 633.488 applies because it states the rights of good faith purchasers for value of estate property "shall not, in any way, be affected."

The argument presupposes section 633.488 is applicable in this case, as section 633.489 does not contain a good-faith-purchaser clause. The beneficiaries' argument, however, provides no reason why section 633.488 should apply. The beneficiaries merely state section 633.488 should apply, without giving any reason, and then argue this language protects the Pearsons as good faith purchasers for value of Ralph's eighty acres. This argument puts the cart before the horse. For reasons stated above, we find the district court properly applied section 633.489 to the plaintiffs' request to reopen Ralph's estate.

Alternatively, the beneficiaries have not shown the Pearsons are good faith purchasers for value of the eighty acres. "'The rule is well established that to be a good faith purchaser for value, one must show that he made the purchase before he had notice of the claim of another, express or implied.'" *Moser v. Thorp Sales Corp.*, 312 N.W.2d 881, 886 (Iowa 1981) (quoting *Janssen v. N. Iowa Conference Pensions Inc. of Methodist Church*, 166 N.W.2d 901, 908 (Iowa 1969); *see also Moser v. Thorp Sales Corp.*, 256 N.W. 2d 900, 910–11 (Iowa 1977) (citing *Raub v. Gen. Income Sponsors of Iowa, Inc.*, 176 N.W.2d 216, 219 (Iowa 1970)

(defining a bona fide purchaser as "one who takes a conveyance of real estate in good faith from the holder of legal title, paying a valuable consideration for it without notice of outstanding equities")). A real estate contract has been signed, and the Pearsons' down payment is in escrow, but title has not been transferred. The title examiner raised an issue about the Lewises' right to purchase which prevented the Pearsons from closing on the sale. If the sale falls through, the Pearsons get their money back, and their only prejudice is having a down payment sit in escrow during the pendency of this litigation. The Pearsons have not purchased the eighty acres; therefore, they could not qualify as good faith purchasers for value.

**D. No Abuse of Discretion.** The district court reopened the estate under section 633.489. The beneficiaries claim the district court abused its discretion by not applying section 633.488. We disagree. For the reasons stated above, the Lewises' right to purchase, which came to light years after the estate was closed, was the type of event which falls within section 633.489.

The district court determined section 633.489 applied because the plaintiff's option to purchase had not been previously considered. The court then looked to the three statutory grounds set forth in 633.489 for reopening the estate. The court found the "necessary act" and "any other proper cause" grounds both applied in this case. The district court found the executor of the estate failed to perform "all necessary acts" because the executor failed to notify the plaintiffs of the probate of the will, in violation of Iowa Code section 633.304, which requires all persons "believed to own or possess a claim" to be notified. The district court also used its discretion to conclude "the lack of notice to the Lewises throughout the probate of the will constitutes proper cause for reopening

the estate." Moreover, there are minimal practical difficulties in exercising the option as the land still remains with the distributees. *See Warrington*, 686 N.W.2d at 205 (noting practical difficulties in reopening estate or deprivation of beneficiaries of testamentary devise are reasons that might justify not opening an estate).

We concur with the district court's reasoning on the "necessary act" ground and the "any other proper cause" ground. A court abuses its discretion only when its exercise of discretion is "clearly untenable, or to an extent, clearly unreasonable." *Lynch*, 491 N.W.2d at 161. We find the district court's determination that this case's equitable facts constituted a "proper cause" to reopen the estate under Iowa Code section 633.489 to be neither untenable nor unreasonable. The district court did not abuse its discretion in reopening the estate.

## V. Will Construction.

The beneficiaries next contend the district court erred in construing the will.

Ralph's will states in pertinent part:

II. I give, devise and bequeath to my spouse, Marjorie Roethler, a life estate in all real estate I may own at the time of my death upon the condition that she survives me.

III. Subject to a life estate in my spouse, Marjorie Roethler, I give, devise, and bequeath the remaining interest in the real estate I own at the time of my death to the following: Angela Kuehn, Margaret Homan, Cheryll Upton, Jacqueline Betsworth, Daniel Roethler, James Roethler, John Roethler, Donald Roethler, Jerald Roethler, Mary Anne James, Connie Duke, and Kathy Good, share and share alike.

. . . .

V. I herein give Kent Lewis and Becky Lewis the first right of purchase to the following described real estate, to-wit:

80 Acres in Diamond Township, Section One; at the appraised value in the Estate. This right to purchase shall be given them for a period of four months from my date of

death. Notice of said right to purchase shall be filed in my Estate in writing.

. . . .

VII. I give my Executor, hereinafter named, the authority to sell and to turn into cash any property that I may own at the time of my death, without appraisal, court approval, or the giving of bond. I also authorize by Executor to employ, at my Estate's expense, professional persons to help in the administration of my Estate, including, but not limited to a real estate broker.

The district court construed paragraph V to provide the Lewises an unqualified first right to purchase the eighty acres within four months of Ralph's death. The beneficiaries contend paragraph V only offers the Lewises the first right to purchase, in the event the executor, Marjorie, elected to sell the eighty acres within four months after Ralph's death.

**A. Principles of Will Construction.** Our principles of will construction are long-settled:

> (1) the intent of the testator is the polestar and must prevail; (2) this intent, however, must be derived from (a) all of the language contained within the four corners of the will, (b) the scheme of distribution, (c) the surrounding circumstances at the time of the will's execution and (d) the existing facts; (3) we resort to technical rules or canons of construction only when the will is ambiguous or conflicting or the testator's intent is uncertain. In determining intent, the question is not what the testator meant to say, but rather what is the meaning of what the testator did say.

*In re Estate of Rogers*, 473 N.W.2d 36, 39 (Iowa 1991) (citation omitted). The instrument should be considered as a whole, giving each part meaning and effect. *Elkader Prod. Credit Ass'n v. Eulberg*, 251 N.W.2d 234, 237–38 (Iowa 1977). The court considers extrinsic evidence only if there is an ambiguity, and extrinsic evidence cannot vary, contradict, or add to the will's terms. *Rogers*, 473 N.W.2d at 39.

**B. Will Language and Distribution Scheme.**

1. *Qualified or unqualified option.* The will provisions, taken together, provide Marjorie "a life estate in all [of Ralph's] real estate," the Lewises "the first right of purchase" to the eighty acres "at the appraised value . . . for a period of four months" from Ralph's death, and vests the executor, Marjorie, "the authority to sell and turn into cash any property . . . without appraisal, court approval, or the giving of bond."

The beneficiaries stress this language vests the Lewises with a contingent first purchase option in the event Marjorie elects to sell the eighty acres within four months of Ralph's death. This construction is problematic.

First, there is no conditional language in paragraph V. It states, "I herein give [the Lewises] the first right of purchase." Our case law has found conditional purchase options when express conditional language was used to qualify a right of first purchase. *See Noel v. Uthe*, 184 N.W.2d 686, 689 (Iowa 1971) (finding farm tenant did not have right of first purchase after the will was probated because it provided the renter a right of first purchase "in the event my Executor shall determine that any real estate . . . shall be sold"). The beneficiaries' advocated construction is essentially a "right of first refusal"—where the Lewises would be given the right to buy the land in the event Marjorie intended to sell. But Ralph's will contains a first right of purchase, not a right of first refusal. Paragraph V later refers to the purchase option as "[t]his right to purchase shall be given them for a period of four months." This language is again unqualified. Giving the beneficiaries their advocated construction would be rewriting the language of paragraph V to give the Lewises a "right of first refusal."

Second, if the beneficiaries' construction is adopted, there is a conflict between Lewises' first option to purchase the eighty acres at "the appraised value" and Marjorie's authority to sell "any property . . . without appraisal." If Marjorie had to contemplate selling the eighty acres in order to trigger the Lewises' option, then the provisions are contradictory as to whether Marjorie must sell the land to the Lewises at the "appraised value" or can sell the property "without appraisal." These provisions, however, are entirely consistent if the Lewises' option is viewed as an unqualified specific bequest, and Marjorie's authorization to sell property is viewed as a general authorization of authority. *See* Iowa Code § 633.436 (specific devisees take precedence over general or residuary devisees in abatement). Under this approach, Paragraph V would provide the Lewises' with an unqualified right to purchase the eighty acres "at the appraised value" within four months. In the event the Lewises decline, Paragraph VII authorizes Marjorie to sell the eighty acres at any subsequent date without another appraisal or without regard to appraised value. Construing Paragraph V as an unqualified option to purchase therefore gives effect to all the will provisions.

2. *Paragraphs II and V.* The beneficiaries contend Paragraphs II and V create ambiguity. These provisions, however, are entirely consistent with construing the will to providing the Lewises an unqualified right of first purchase.

Paragraph II provides Marjorie a life estate in all real property Ralph owned. At Ralph's death, he owned the eighty-acre farm and their lot and home in Aurelia. Paragraph V then offers the Lewises the purchase option for eighty acres. There is nothing facially inconsistent with these provisions. *In re Estate of Hansen*, 264 N.W.2d 746 (Iowa 1978), held a testator's devise to his children to share equally "personal,

Real estate, Stocks, and Bonds" was not in conflict with a subsequent devise in his will for his son to have an option to purchase eighty acres. *Hansen*, 264 N.W.2d at 747–49. Ralph's will has a nearly identical set-up. Paragraph II provides Marjorie a life estate in all of his real estate and then Paragraph V gives the Lewises an option to purchase a specific piece of real estate. This specific purchase option simply places a specific condition into Paragraph II's general devise to Marjorie. The paragraphs do not create ambiguity nor undermine our conclusion the will provides the Lewises an unqualified right to purchase Ralph's eighty acres.

**C. Extrinsic Evidence and Circumstances Surrounding Will.** Both parties point to extrinsic evidence that favors their construction.[3] Irrespective of our conclusion as to whether the will's plain language is ambiguous, the extrinsic evidence does little to resolve this dispute.

The beneficiaries point to Hankens' testimony and his actions in probate as evidencing Ralph intended to give the Lewises only a qualified right to purchase. Hankens testified he did not send the Lewises a probate notice because Marjorie was not intending to sell the acreage, and he believed Paragraph V only provided the Lewises a purchase option in the event Marjorie elected to sell. The Lewises testified about their "close relationship" with Ralph and Marjorie during the years leading up to Ralph's will execution. The credibility of the testimony is questionable, as each party is interested in the outcome—Hankens is

---

[3]The beneficiaries argue the district court erred in finding the will language plain and then also considering some "other circumstances" such as the Lewises' close relationship with Ralph. Whatever the merits of the district court's analysis, on our de novo review we are not reviewing the district court for error, but instead performing our own independent construction. If we find ambiguity, then we consider extrinsic evidence and give it whatever weight we deem appropriate. If we do not find an ambiguity, then we do not consider the extrinsic evidence.

facing a tort suit for improperly probating Ralph's will, and the Lewises will be able to purchase eighty farm acres at below market value if they prevail in the lawsuit.

**D. The Will Vests Lewises with an Unqualified Purchase Option.** The extrinsic evidence is contradictory and does not affect the construction of the language of the will. The will is unambiguous, and the will's plain language provides the Lewises an unqualified first option to purchase Ralph's eighty acres because (1) the will contains no conditional language, and (2) such a construction gives effect to all provisions of the will and reconciles Paragraphs V and VII. To accept the beneficiaries' construction would create an irreconcilable conflict between the provisions of the will. We find the will provides the Lewises an unqualified first right to purchase Ralph's eighty acres.

## VI. Acreage Purchase Price.

The beneficiaries finally contend the district court erred by setting the purchase price of Ralph's eighty acres at the 1999 appraisal value, and not the land's appraisal value when the Pearsons contracted to purchase the land in 2008. The beneficiaries claim awarding the Lewises a right to purchase the eighty acres at the 1999 appraised value, unjustly enriches the Lewises as it provides them, not the beneficiaries, with the farmland's increased value over the last decade.

Unjust enrichment is a doctrine that "evolved from the most basic legal concept of preventing injustice." *State ex rel. Palmer v. Unisys Corp.*, 637 N.W.2d 142, 149 (Iowa 2001). For nearly a decade, the executor, her attorney, and the beneficiaries failed to notify the Lewises that Ralph's will specifically provided them a first right to purchase his eighty farmland acres within four months of his death. Only through this silence did the beneficiaries gain title to Ralph's eighty acres. The

beneficiaries now seek to invoke an equitable doctrine to seize a decade's worth of appreciation which was only procured through the failure to address the purchase option during Ralph's probate. Equities do not favor the beneficiaries, and equity entitles the Lewises to specific performance of the "the first right to purchase" the eighty acres "at the appraised value in the Estate" which is $140,600. *See Simpson v. Bostwick*, 248 Iowa 238, 244, 80 N.W.2d 339, 343 (1957) (noting specific performance is an equitable remedy and "once equity has obtained jurisdiction of a controversy, it will determine all questions . . . to accomplish full and complete justice between the parties"); *see also Whalen v. Connelly*, 621 N.W.2d 681, 686–87 (Iowa 2001) (party who wrongfully delayed transfer of stock certificates bore risk of loss from change in value). The district court properly determined the purchase price to be $140,600, the appraised value of the eighty acres at the time of Ralph's death.

**VII. Disposition.**

The district court did not abuse its discretion in reopening the estate to determine whether the Lewises possessed a valid option to purchase Ralph's eighty acres. The Lewises' first right to purchase was not addressed during the probate of Ralph's estate. Ralph's executor was required to provide notice to the Lewises so that the estate could be properly administered. Allowing the Lewises an opportunity to exercise this option during the probate of Ralph's estate was a "necessary act," and equity regards this case as a "proper circumstance" to reopen the estate. On our de novo review, we find the will to be unambiguous and logically construed to provide the Lewises an unqualified option to purchase the eighty acres at the appraised value at Ralph's death. Rewording Ralph's will to provide the Lewises an option for first refusal,

rather than an option to purchase, as advocated by the beneficiaries, would be a misuse of this court's equitable powers. This court does not have the power to rewrite a living testator's will, nor do we have the power to rewrite a decedent's. Accordingly, the decision of the court of appeals is vacated, and the district court order is affirmed.

**COURT OF APPEALS DECISION VACATED; DISTRICT COURT JUDGMENT AFFIRMED**.

All justices concur except Mansfield, J., who takes no part.