**IN THE COURT OF APPEALS OF IOWA**

No. 14-0474
Filed December 24, 2014

**IN THE MATTER OF THE ESTATE
OF HELEN M. MARTIN, Deceased.**

**JAMES MARTIN and FRANK MARTIN III,**
    Intervenors-Appellants,

**vs.**

**THOMPSON FAMILY HOLDINGS, LLC,**
    Claimant-Appellee.
_____

Appeal from the Iowa District Court for Linn County, Douglas S. Russell,

Judge.

Personal representatives of a reopened estate appeal the district court's

denial of their motion to vacate the reopening. **REVERSED AND REMANDED.**

Jonathan E. Kramer of Whitfield & Eddy, P.L.C., Des Moines, for

appellants.

Catherine E. Hult of Lane & Waterman, L.L.P., Davenport, for appellee.

Considered by Potterfield, P.J., and Tabor and Mullins, JJ.

**TABOR, J.**

This appeal involves the propriety of reopening an estate under Iowa Code section 633.489 (2013). The district court granted a motion filed by Thompson Family Holdings, LLC to reopen the estate of Helen Martin, who died in 1990. Thompson is a subsequent purchaser of the Linn County property in which Helen Martin held an undivided two-thirds interest at the time of her death. After the foreclosure judgment on this heavily mortgaged property, it sold at a sheriff's sale in December 1991. But, the bank did not include Helen Martin's estate as a defendant in the foreclosure suit. During the administration of Helen's estate, the personal representative—Frank Martin II[1]—transferred the estate's interest in the foreclosed property to his sons, Helen's grandsons, James Martin and Frank Martin III (the Martins), by a court officer deed on March 2, 1994. On March 4, 1994, the probate court approved the supplemental final report of the estate.

Thompson now desires to remove a "cloud on the title" to its real estate and alleges the estate is an essential party to its quiet title action. The district court agreed and appointed the Martins as co-personal representatives of the reopened estate. The Martins sought to vacate the reopening order and reclose their grandmother's estate. The court denied their motion, and they now appeal.[2]

---

[1] Frank Martin II, Helen's son, is now deceased.

[2] Section 633.489 permits a district court to consider reopening an estate based on a petition filed by "any interested person." The Martins contend the district court abused its discretion in finding Thompson was an "interested person" under the statutory language. We decline to address this issue. *See In re Estate of Witzke*, 359 N.W.2d 183, 184 (Iowa 1984) (declining to address whether the petitioners are "interested persons" when there was no proper cause for reopening the estate).

The Martins contend the court abused its discretion in finding Thompson advanced a "proper cause" for reopening Helen's estate.

While district courts have broad discretion to reopen an estate to correct an alleged error in administration under section 633.489, any interest the estate had in Thompson's property was transferred to the Martins before the court-approved closing of the estate. Because the estate has no interest in the property and the court-approved sale is entitled to finality, the district court abused its discretion by reopening the estate.

## I. *Background Facts and Proceedings*

The real property at issue in this case is identified as Lot 1, M. and R. Industrial Addition to Cedar Rapids, Linn County, Iowa. Helen Martin received a warranty deed to that property in March 1968.[3] In 1986 she transferred a one-sixth interest in the property to each of her two sons, Frank Martin II and Michael Martin, as tenants in common—leaving her with an undivided two-thirds interest in the real estate. Michael Martin died in January 1987. In October 1987 Helen Martin mortgaged her interest in the property to secure a debt of $400,000 owed by Martin Brothers Equipment and Supply Company to then Merchants National Bank of Cedar Rapids. At the same time, Helen's son, Frank Martin II, and the estate of her son Michael also gave mortgages on the property to secure that

---

[3] Although the record contains the district court's docket card for the probate action on the Helen Martin estate, the probate files were destroyed during the flooding in Cedar Rapids. Therefore, our explanation of the historical facts is derived from a combination of the probate docket card and the abstract of the subject property. The Michael Martin estate's December 30, 1987 report and inventory valued Michael's one-sixth interest in the property at $10,496.33 and valued the total property at $62,978.

debt.  Helen died on January 29, 1990, and her estate opened in February 1990.  Frank Martin II was appointed as personal representative.

Merchants National Bank initiated a foreclosure action on July 6, 1990.  The bank named as defendants, among others, Twenty-Seven Ten, Inc.; Frank Martin II; and the executor of the estate of Michael Martin.  The bank did not name the executor of the estate of Helen Martin.

An inventory filed by Helen's estate on August 23, 1990, listed a two-thirds interest in the subject property as an asset—total property value of $70,000 and two-third interest value of $46,667.  The inventory also listed Helen's shares of stock giving her a sixty-one percent ownership in Twenty-Seven Ten, Inc.[4]

The July 16, 1992 final report for Helen's estate noted she died owning the subject property and also stated: "2/3 interest – Foreclosed by [Merchants National Bank].  Judgment [was] approximately $485,000.  The Judgment was based on a 1987 Note to Martin Brothers Equipment and supply for $400,000.  Sheriff's sale was held on 12-27-91 and the [bank] bid approximately $70,000 for the lot."  That same month, several beneficiaries objected to the final report, stating: "This estate was not made a party to the foreclosure proceedings . . . therefore, disposition of the stock in Twenty-Seven Ten, Inc., remains to be resolved."  Ten months later, the court's May 26, 1993 order overruled the

---

[4] The inventory explained Twenty-Seven Ten, Inc.'s only asset is "the real estate and building in which Martin Brothers Equipment and Supply Company operates.  This property is presently for sale and it is hoped that it will net $500,000.  It is pledged as security . . . and is presently in foreclosure."  The inventory projected a $100,000 surplus for the company's shareholders after the existing debt was paid.

objections on the disposition of the stock, found no ambiguity in the will, and ordered the distribution of the estate.

A few days later, on June 4, 1993, Frank Martin II filed a motion to amend or enlarge, alleging "the estate of Helen Martin was not named in the foreclosure suit brought by Merchants National Bank, and thus the estate's undivided 2/3 interest in Lot 1, M & R Industrial Addition to Cedar Rapids, Iowa has not been foreclosed." Several beneficiaries resisted the motion, claiming those alleged facts were "irrelevant to any of the issues before the Court as they have no relation to the administration" of Helen's estate. The court's June 23 order overruled the motion for the reasons set forth in the resistance.

Both the personal representative and the beneficiaries appealed the ruling, but the appeals were dismissed, apparently due to a March 3, 1994 settlement agreement noted on the probate docket card. A day before the settlement agreement, on March 2, 1994, Frank Martin II, issued a court officer deed to his sons, James Martin and Frank Martin III, conveying an undivided two-thirds interest in the subject property for one dollar in consideration. A day after the settlement agreement, on March 4, 1994, the court approved a supplemental final report for Helen's estate.

Thompson's claim to the property originated in the bank's foreclosure action. The district court held a hearing in the foreclosure action in October 1991 and ordered the mortgages foreclosed and the property sold. After the December 1991 foreclosure sale, a sheriff's deed to the bank was recorded on

June 25, 1992.[5]  On that same date, a special warranty deed was recorded showing a transfer of the property from the bank to the Small Business Administration.  The Small Business Administration deeded the property to Edmund and Carol Conroy on October 12, 1993, and the Conroys transferred the property to Claddagh, L.C. by quitclaim deed in November 1993.[6]  Claddagh sold the property to Thompson on contract, which was recorded on September 23, 2008.

The March 2, 1994 court officer deed (or executor's deed) from Frank Martin II to his sons, filed in the abstract of title on April 19, 1994, is the "cloud" that prompted Thompson to file its petition to quiet title in March 2013.  The quiet title petition alleged:

> The probate of the Estate of Helen M. Martin is unclear as to whether the intent of the Executor's Deed was to grant Frank Martin III and James Martin the 2/3 interest in the Property or to grant Frank Martin III and James Martin rights to any proceeds of the foreclosure of the 2/3 interest in the Property since the same had already been foreclosed, sold under sheriff's Sale to the lender and further sold to a good faith purchaser for value, Edmund F. and Carol A. Conroy, prior to the Executor's Deed.

Thompson's petition to quiet title further alleged Helen Martin's estate, Frank Martin III, and James Martin "may claim some interest in the Property due to the

---

[5] The abstract notes the July 23, 1992 final report in Michael Martin's estate provides that pursuant to an October 1, 1991 court order, the executor was authorized to sell the estate's one-sixth interest in the property to Diane G. Martin (Michael's wife).  "However, such real estate was subject to a pending foreclosure action . . . and a foreclosure decree was entered October 21, 1991, and a sheriff's sale was held on December 29, 1991, [and] the redemption period expired June 29, 1992."  Therefore, "the [Michael Martin] estate had no interest in the property to convey and no interest was conveyed to Diane G. Martin."  The Michael Martin estate was closed in August 1992.
[6] According to the abstract of title, the quitclaim deed recites: "Grantors have heretofore held title as Grantee's agent."

Supplemental Report of the Probate Court and the Executor's Deed as described herein."

Two months after filing its quiet title action, on May 17, 2013, Thompson filed a petition to reopen Helen Martin's estate and to reappoint a personal representative. The petition to reopen stated:

> The opening of the Estate is necessary to clarify that the Estate was divested of the Real Estate under a foreclosure sale and that a subsequent order of the Court in the Estate administration transferring the Real Estate to specific beneficiaries only transferred rights to proceeds, if any, remaining after the foreclosure sale.

On the same day, the district court granted the petition to reopen and appointed the Martins as co-personal representatives. The order provided: "That the Estate shall be re-closed upon entry of a Final Decree in the Quiet Title Action."

In September 2013, the Martins moved to vacate the reopening order and reclose the estate. Thompson resisted and claimed:

> The Executor's Deed dated March 2, 1994 . . . was given almost two years after the completion of a foreclosure in which the property was sold at Sheriff's sale and a Sheriff's Deed . . . recorded June 25, 1992 . . . was issued to Petitioner's predecessor in title.

On February 4, 2014, the district court held an unreported, telephonic hearing on the matter, which was later summarized in a "settled and approved statement of evidence" for purposes of this appeal. On February 19, 2014, the court denied the Martins' motion. The Martins filed a timely notice of appeal from that denial.

## II.      Principles of Reopening

The Iowa probate code addresses the reopening of estates in three sections of Division VII, Part 9.  *See* Iowa Code §§ 633.487,[7] .488,[8] .489.[9]  Our supreme court recently summarized the purpose of those three provisions:

> [S]ection 633.487 essentially cuts off the rights of persons who received notice of the final report to contest distribution or prior acts of administration, except in the case of fraud.  Section 633.488 imposes a five-year deadline on persons who did *not* receive notice to seek a "new accounting" or a "redistribution" of property that

---

[7] Iowa Code section 633.487 states:
**Limitation on rights.**  No person, having been served [or waived] notice of the hearing upon the final report and accounting of a personal representative . . . shall, after the entry of the final order approving the same . . . have any right to contest, in any proceeding, other than by appeal, the correctness or the legality of the inventory, the accounting, distribution, or other acts of the personal representative, or the list of heirs set forth in the final report . . . provided, however, that nothing . . . shall prohibit any action against the personal representative . . . on account of any fraud committed by the personal representative.

[8] Iowa Code section 633.488 states:
**Reopening settlement.**  Whenever a final report has been approved and a final accounting has been settled in the absence of any person adversely affected and without notice to the person, the hearing on such report and accounting may be reopened at any time within five years from the entry of the order approving the same, upon the application of such person, and, upon a hearing, after such notice as the court may prescribe to be served upon the personal representative and the distributees, the court may require a new accounting, or a redistribution from the distributees.  In no event, however, shall any distributee be liable to account for more than the property distributed to that distributee.  If any property of the estate shall have passed into the hands of good faith purchasers for value, the rights of such purchasers shall not, in any way, be affected.

[9] Iowa Code 633.489 states:
**Reopening administration.** Upon the petition of any interested person, the court may . . . order an estate reopened if other property be discovered, if any necessary act remains unperformed, or for any other proper cause appearing to the court. It may . . . appoint another personal representative, to administer any additional property or to perform other such acts as may be deemed necessary.  The provisions of law as to original administration shall apply, insofar as applicable, to accomplish the purpose for which the estate is reopened, but a claim which is already barred can, in no event, be asserted in the reopened administration.

passed through an estate. Section 633.489 allows a party to request reopening of the estate at any time, regardless of prior notice or the lack thereof, "if other property be discovered, if any necessary act remains unperformed, or for any other proper cause."

*In re Estate of Sampson*, 838 N.W.2d 663, 667 (Iowa 2013) (citations omitted).

Noting the titles of the various sections are informative, the court explained

section 633.487 is intended as a "limitation on rights" of persons who received notice of hearing on the final report. Meanwhile, section 633.488 is about reopening *settlement*—e.g., seeking to redistribute property from one party to another—whereas section 633.489 is about reopening *administration*—e.g., seeking to distribute newly discovered property . . . or performance of required but omitted acts of personal representatives.

*Id.*

We review the district court's decision to reopen an estate under section 633.489 for an abuse of discretion. *In re Estate of Roethler*, 801 N.W.2d 833, 837 (Iowa 2011). An abuse occurs if the court exercises its discretion "on grounds clearly untenable, or to an extent, clearly unreasonable." *In re Estate of Lynch*, 491 N.W.2d 157, 161 (Iowa 1992). "Under section 633.489 the court is provided broad discretion in determining whether an estate should be reopened." *Id.* at 160.

The final clause of section 633.489 permits the district court to reopen an estate "for any other proper cause appearing to the court." "The meaning of this language is not explained in the statute [or] the legislative history." *Witzke*, 359 N.W.2d at 185. The "other proper cause" language allows the district court to exercise discretion in considering a petition that alleges a cause for reopening

other than the discovery of additional property or the performance of a necessary act. *Id.*

In *Witzke*, the court resolved a similar section 633.489 issue that likewise involved the interplay between a court officer deed and a request to reopen an estate. *See id.* The purchasers of land who held a court officer deed from the estate filed a petition to reopen the estate, alleging they discovered the administrator fraudulently misrepresented the boundaries of the realty after the estate had been closed. *Id.* at 184. The district court refused to reopen the estate, and the supreme court upheld the refusal because "fraudulent misrepresentations by an administrator in selling estate property do not render the estate liable for damages, but only the administrator personally." *Id.* at 185; *see Roethler*, 801 N.W.2d at 838 (stating the *Witzke* court "reasonably determined that holding the estate liable for an administrator's fraud was an undesirable reason to reopen the estate"). *Witzke* discussed judicial sales and recognized the "undesirability of allowing recovery by a purchaser against the estate (as distinguished from the administrator)":

> "Judicial sales . . . are of a peculiar nature. Unlike ordinary sales transactions, the proceeds from judicial sales are not kept by the vendor . . . but are distributed to the creditors of the estate to satisfy debts. The need for stability and finality in such sales is great. Both the estate and the creditors are entitled to rely on the final distribution of the proceeds of a judicial sale."

359 N.W.2d at 185 (quoting *Bormann v. Simpson*, 359 N.E.2d 824, 828 (Ill. App. Ct. 1977)). We note the court approved the sale of the Helen Martin estate's interest in the property, whatever that interest entailed, to the Martins. Thus, the Martins hold their deed by virtue of a court-approved sale.

Finally, *Witzke* discussed the practical difficulties that weighed against reopening the estate:

> Other practical difficulties connected with the reopening of the estate under these circumstances include payment of attorney fees for representing the estate in the action against it, and payment of court costs by the estate if judgment should ultimately be entered against it. In connection therewith there would be the problem of the estate attempting to get back funds that had already been paid to the distributees or creditors prior to the closing of the estate so the reopened estate could honor petitioners' claim, if it is allowed by the court.

*Id.* The same practical difficulties regarding costs and attorney fees would occur if the Helen Martin estate remains reopened.

In *Lynch*, the case relied upon by the district court in ordering Helen's estate reopened, the supreme court again considered the for-any-other-proper-cause provision of section 633.489 and ruled an estate should be reopened to correct the overpayment of executor and attorney fees; the overpayment was based on the executor's mistaken belief a marital trust was part of the gross estate. 491 N.W.2d at 159–61. The court decided the overpayment mistake was a matter of administration and not a challenge to the underlying distribution of property under the will. *Id.* at 161 (stating the reopening "to allow the court to recalculate the fees . . . does not deprive the [executor] of any fees rightfully owed to it"); *see Sampson*, 838 N.W.2d at 669 (stating "*Lynch* should be viewed as a case involving estate administration"); *Roethler*, 801 N.W.2d at 838 (stating the *Lynch* court "noted 'equitable principles' favored reopening the estate to prevent the [executor] from profiting from its mistake at the expense of the beneficiaries").

Subsequently, the *Roethler* court distinguished between reopening settlement under section 633.488 and reopening administration under section 633.489. 801 N.W.2d at 839-840. The court explained section 633.489 "applies where future events require *administration* of matters not considered in the final report." *Id.* at 840 (emphasis added). In the case at bar, the district court approved the supplemental final report, which included the sale of the estate's interest in the property to the Martins; thus, this case does *not* involve "administration of matters not considered in the final report." *See id.*

Recently, the *Sampson* court discussed a situation where relatives of the testator (who expected to inherit in the future after the testator's spouse died) sought to reopen the testator's estate after the spouse's death to correct an alleged error in the prior distribution of the testator's property among the heirs. 838 N.W.2d at 665-66. The court ruled the request to reopen, "purely and simply, involves 'redistributing property amongst distributees'" and is covered by section 633.488 and time barred. *Id.* at 669. The *Sampson* court explained if 'other proper cause' were interpreted too expansively, it would subsume section 633.488's five-year time limit on reopening settlement." *Id.* at 670 (noting phrase "other proper cause" was not intended "to dramatically enlarge the scope of section 633.489 so it can be used to reopen settlement").

With these principles in mind, we turn to the Martins' arguments for vacating the district court's order to reopen the estate.

### III.     Analysis of Proper Cause for Reopening the Estate

The district court relied on *Lynch* in finding Thompson presented proper cause to reopen the estate based on an alleged error in the administration, namely the executor issuing the court officer deed. *See Lynch*, 491 N.W.2d at 161 (ruling the correction of an executor's mistakes as to fees constituted proper cause to reopen an estate). We find that reliance misplaced. The subsequent case of *Roethler* stated section 633.489 "applies where future events require administration of matters not considered in the final report." 801 N.W.2d at 840. Here, the sale to the Martins was considered and approved in the final report. The recent *Sampson* case emphasized: "Again, [*Lynch*] did not affect the previously approved plan of distribution." 838 N.W.2d at 669. Here, the previously approved plan of distribution included the court-approved sale of estate's interest in the property to the Martins.

On appeal, the Martins question whether their father, as personal representative of their grandmother's estate, committed a *Lynch*-type "mistake" in conveying the estate's interest in the property to them. They contend rather than correcting a later-detected mistake, Thompson's goal in reopening the estate is to "*un-administer* real estate specifically contemplated and administered during the Estate and after such sale was approved by the District Court in 1994." The Martins also deny the estate is affected by the Thompson quiet title proceeding because the judicial sale to them resulted in the estate selling all of its interest in the subject real estate. In sum, they do not believe any mistake needs correcting:

> Either [the estate] had an interest to sell, or it did not. Either way, it does not have a real estate interest now. If the Estate has an interest to sell in 1994, there is nothing wrong with the sale, and there is no reason to open the Estate. If it did not have an interest in 1994, then the people who would be harmed and would have cause to complain would be the Martins in that the Martins would have a potential claim against the Estate for selling a nullity.

Thompson counters that its quiet title action directly challenges the executor's deed given by the estate and failure to reopen the estate "would be to omit a necessary party."

The object of a quiet title action is "to determine all conflicting claims and to remove all clouds from the title of the complainant." *Smith v. Cretors*, 164 N.W. 338, 340–41 (Iowa 1917). Iowa probate cases recognize the important and necessary interplay of probate proceedings and marketable title. *See Sampson*, 838 N.W.2d at 668; *Roethler*, 801 N.W.2d at 841. The *Sampson* court discussed the importance of marketable title in Iowa:

> The underlying policy of having a time limit for claims regarding settlement but not administration makes sense. At some point, it is desirable for the distribution of an estate to be recognized as final, even if there was some flaw in the proceeding, such as a failure to give formal notice to potential beneficiaries. Assets need to be *marketable*, and recipients of estate property need to be able to move on with their affairs.
> On the other hand, if all efforts to reopen an estate were subject to a five-year time bar, then this could handcuff the ability of heirs to deal with unforeseen circumstances or result in assets being unmarketable. For example, if additional property of the testator were discovered six years after the closing of an estate, absent section 633.489 there would be no way of dealing with the property. Or if an error in a legal description surfaced six years after the closing, section 633.489 provides a means of addressing it.

838 N.W.2d at 668 (citing Shirley A. Webster, *Decedents' Estates: Succession and Administration*, 49 Iowa L. Rev. 638, 676-77 (1964)).

Here, there is no error in a legal description nor any newly discovered property. Rather, the Martins' title to the property is based on the court-approved sale of the estate's interest, whatever that interest may be, and the estate no longer has any interest in the property. *See Witzke*, 359 N.W.2d at 185 (denying reopening and recognizing the "need for stability and finality in such sales is great"). Thus, resolving the effect of the deed held by the Martins on Thompson's record title requires the Martins as necessary parties but does not require the estate. There is no proper cause to reopen Helen's estate because it has no remaining interest in the property. *See Sampson*, 834 N.W.2d at 670 (noting the phrase "other proper cause" is not intended "to dramatically enlarge the scope of section 633.489 so it can be used to reopen settlement").

We conclude the district court abused its discretion in denying the Martins' motion to vacate the court's order reopening the Helen Martin estate. We reverse and remand for the entry of an order consistent with this opinion.

**REVERSED AND REMANDED.**