**IN THE COURT OF APPEALS OF IOWA**

No. 22-2008
Filed November 21, 2023

**IN THE MATTER OF THE ESTATE OF JOYCE K. KOOIKER, Deceased.**

**LYLE KOOIKER,**
    Appellant.

_____

Appeal from the Iowa District Court for Sioux County, Jeffrey A. Neary, Judge.

Lyle Kooiker appeals the order modifying the portion of the special master's report addressing the valuation of farmland in the residue of his mother's estate. **AFFIRMED.**

Philip J. De Koster of De Koster & De Koster, PLLC, Hull, for appellee executor.

Nathan J. Rockman and Brandon J. Krikke of DeKoter, Thole, Dawson, Rockman & Krikke, P.L.C., Sibley, for appellees Nick Kooiker and Tricia Driesen.

Colby M. Lessmann of Tigges, Bottaro & Lessmann, LLP, Sioux City, for appellant.

Heard by Tabor, P.J., and Badding and Chicchelly, JJ.

**CHICCHELLY, Judge.**

Lyle Kooiker appeals the order modifying the portion of the special master's report addressing the valuation of farmland in the residue of his mother's estate. Lyle argues that the special master's recommendation to value the farmland based on its appraised value at the date of death was not clearly erroneous and therefore should have been fully adopted by the court. Because the district court correctly determined that the farmland in the residuary of the estate should be valued at date-of-distribution to honor the testator's intent, we affirm.

**I. Background Facts and Proceedings.**

Joyce Kooiker had seven children with her husband, William. When she died in December 2019, she had been preceded in death by William and one child.

Joyce executed a will in 2005.[1] Article I of her will directs the executor[2] to pay her debts from her estate. Article IV makes a separate bequest to one of the surviving children and establishes a trust for his supplemental care, maintenance, support, and education. And Article VI devises the residue of the estate between the remaining five children, with a special provision for her son, Lyle:

> Because my son, Lyle D. Kooiker, whom I dearly love, is difficult to deal with at times, I request that my executors have my farmland appraised and that Lyle or his heirs at law if he should predecease me, shall receive farmland located immediately south of the farmland received by the Last Will and Testament from my late husband, William. This farmland shall be equal in value to Lyle's one-fifth share of my estate residue. The balance of my farmland and all other assets shall go to my remaining 4 children and their heirs by right of representation, and I trust that they will divide and partition the

---

[1] In July 2012, Joyce executed a codicil to her will, but the provisions are not relevant to this appeal.

[2] Although Joyce named four children executors of her estate, the court removed them and appointed American Investment and Trust executor after the will was admitted to probate.

farmland they have received from both my husband and me in a fair, equitable and friendly manner. If this cannot be accomplished then I direct that this farmland be sold at public auction with all of my children having a chance to bid on any of the separate parcels of farmland.

This appeal involves construction of Article VI of Joyce's will. Although it requires an appraisal of the estate's farmland, the will does not specify the date on which it should be valued to distribute the residue. The executor filed an initial report and inventory in July 2020, estimating the farmland's value at $11,000 per acre. An amended inventory filed in October 2020 listed the appraised value of Lyle's share of the farmland at $14,433 per acre at the time of Joyce's death. When Joyce's children could not agree upon an equitable division of the farmland, the balance was sold at public auction at an average price of $23,057 per acre.

In March 2022, the executor moved the court to appoint a special master to resolve disputes that hindered final settlement of the estate, including the valuation of Lyle's interest in the estate residue. It also asked the court to enter an order stating that the bequest of farmland to Lyle was a residuary bequest. After a hearing, the court held that Lyle's bequest was a residuary bequest rather than property specifically given to a beneficiary. It also appointed a special master to investigate and make findings and recommendations to the court on seven issues, including "the calculation to be utilized to determine the value per acre used to determine Lyle Kooiker's residuary distribution under the Will."

The special master filed a report in October 2022. Addressing the farmland, the master recommended valuing Lyle's share at $14,433 per acre, the value at the date of Joyce's death. Two beneficiaries objected to calculating Lyle's share of the farmland based on the appraised value of $14,433, arguing it would create

an inequitable distribution. The court adopted the special master's recommendations on six of the issues but found the objections to using the date-of-death valuation persuasive. The court ordered Lyle's share of the farmland "be promptly appraised to determine the per acre valuation . . . as close to distribution as feasible." Lyle and two other beneficiaries moved the court to reconsider its ruling. The court denied the motions, and Lyle appeals.

**II. Discussion.**

Lyle challenges the order modifying the portion of the special master's report addressing the proper valuation date to use for distribution of the farmland. He contends the master's recommendation was not clearly erroneous and thus should have been fully adopted. Because this case was tried in equity, our review is de novo. Iowa R. App. P. 6.907.

The court is empowered to appoint a special master to decide any issues not to be tried to a jury. Iowa R. Civ. P. 1.935. It can limit the master's duties and the issues addressed in the master's report.[3] Iowa R. Civ. P. 1.937. The actions the court can take on the special master's report are dictated by rules 1.904(1) and 1.942, which are construed together. *See Nelson v. Barnick*, 63 N.W.2d 911, 915 (Iowa 1954). These rules provide "a guide to be followed in the exercise of the discretion vested in the [court], not a limitation upon [its] power." *Iowa Pub. Serv.*

---

[3] Iowa Rule of Civil Procedure 1.941 requires the master to file with the clerk "the original exhibits, and any transcript of the proceedings and evidence, otherwise a summary thereof, with a report on the matters submitted in the order of reference." The special master did not file any materials with his report, and the district court determined that the special master's findings and recommendations were a summary as allowed under rule 1.941. Because the district court did not review or consider any additional materials when it modified the special master's report, we do not consider those materials part of the record on appeal.

*Co. v. Sioux City*, 107 N.W.2d 109, 112 (Iowa 1961) (quoting *United States v. Twin City Power Co.*, 248 F.2d 108, 112 (4th Cir. 1957) (addressing the federal counterpart to our rules)).

Rule 1.904(1) states that the master's findings "shall be deemed those of the court to the extent it adopts them." Iowa R. Civ. P. 1.904(1). Rule 1.942 allows the court the options of adopting, rejecting, or modifying the master's report wholly or in part or recommitting it with instructions. It also states that the court "shall accept the master's findings of fact unless clearly erroneous." Iowa R. Civ. P. 1.942. A finding of fact is "clearly erroneous" if after reviewing the entire record, the court "has a definite and firm conviction that a mistake has been committed." *United States v. Or. State Med. Soc'y*, 343 U.S. 326, 339 (1952) (citation omitted) (interpreting the federal counterpart to our rules), *noted in Nelson*, 63 N.W.2d at 916.

Because the duty of de novo review puts us in the same position as the district court in reviewing the master's report, we review the evidence as summarized by the special master and determine whether the findings are clearly erroneous. *See Rowen v. LeMars Mut. Ins. Co.*, 347 N.W.2d 630, 634 (Iowa 1984). Doing so requires construction of Joyce's will and mindfulness of these rules:

> (1) the intent of the testator is the polestar and must prevail;
> (2) this intent, however, must be derived from (a) all of the language contained within the four corners of the will, (b) the scheme of distribution, (c) the surrounding circumstances at the time of the will's execution and (d) the existing facts;
> (3) we resort to technical rules or canons of construction only when the will is ambiguous or conflicting or the testator's intent is uncertain. In determining intent, the question is not what the testator meant to say, but rather what is the meaning of what the testator did say.

*In re Est. of Roethler*, 801 N.W.2d 833, 842 (Iowa 2011).

The special master recommended valuing Lyle's share of the farmland at $14,433 per acre, the amount of the retroactive appraisal listed in the October 2020 amended inventory. Although the will does not specify when the residual estate should be valued for distribution, the special master noted that the IRS requires valuation for federal estate tax purposes using the date of death or an alternate valuation six months from the date of death. The master determined that the residual estate could have been distributed at the time of the October 2020 appraisal with the only outstanding issue being "what expenses would need to be paid to arrive at the distributable estate." Although the distribution occurred two years later because of disagreements between Lyle and the other beneficiaries, the special master noted that Joyce anticipated and planned for the disagreements in her will. Because the only condition stated in the will for Lyle's share of the farmland was its appraisal, which was completed by October 2020, the special master recommended using that appraisal to determine the residue's value and the number of acres Lyle would receive for his share:

> When the South farm (101.78 acres) is valued at $14,433.00 per acre, that result is $1,468,990. When added to the proceeds of the auction of the other farmland ($5,653,694.00) the total value of the estate is $7,122,684.74. This amount represents the gross estate, and, as described in the next section, costs and expenses, including capital gain, must be deducted from this amount before shares are determined. After the expenses are deducted, arriving at the net estate, that amount should be split five ways. Once that figure is determined, Lyle's share of the South farm can be determined, based on a value of $14,433.00 per acre.

We begin by noting that special master erred in finding that Lyle's share of the residual estate could have been distributed to him in October 2020. The

residue of an estate is "what remains after the debts, expenses of administration, legacies, and satisfaction of devises have been made." *Elkader Prod. Credit Ass'n v. Eulberg*, 251 N.W.2d 234, 239 (Iowa 1977). "The interest of the residuary legatee could be determined only by a settlement of the estate and an ascertainment thereby of what such residuary estate should consist of." *Wapello Cnty. Sav. Bank v. Keokuk County*, 229 N.W. 721, 722 (Iowa 1930). The deduction for expenses had not yet been made when the special master filed his report.

More importantly, the special master's recommendation does not lead to an equal distribution as specified by Joyce. The will provides that the residual estate is to be split equally between five of the children with Lyle receiving his share in farmland "equal in value to [his] one-fifth share." Evidently, the value of the land has climbed since the appraisal; parcels valued between $12,280 and $14,663 per acre in October 2020 sold at auction for an average of $23,057 per acre. The higher prices paid at auction increase the total value of the residual estate and, correspondingly, Lyle's share. Using the lower appraisal figure in converting his share of the residue to farmland will result in Lyle receiving a greater number of acres than he would receive using a recent appraisal. In other words, the method recommended by the special master doubly benefits Lyle by increasing both his overall share of the residue and the amount of farmland he can obtain from that share. To reach a fair and equitable result, the court should value the assets using similar appraisals, preferably near the date of distribution. *See* 34 C.J.S. *Executors and Administrators* § 637 ("Where there is a residuary distribution in kind of the same security to various beneficiaries it makes no difference whether the valuation date is the mean, closing, or opening price, *provided the same*

*method is used in all instances* and the result is fair." (emphasis added)); *cf. King v. Onthank*, 871 A.2d 14, 17 (N.H. 2005) (concluding the date of distribution of the trust assets was equitable to when no date was specified); Restatement (Second) of Trusts § 347 cmt. h (Am. Law. Inst. 1959) (stating that when a trustee divides the trust estate into fractional shares to convey in kind to the several beneficiaries, "the trustee must make the division in accordance with the fair market value of the property *at the time of distribution*" (emphasis added)).

The district court correctly determined that the special master's recommendation to value the farmland based on its appraised value at the date of death was erroneous. We affirm the order modifying the report to use a date-of-distribution valuation, which honors Joyce's intent.

**AFFIRMED.**